[a] Ante, page 222.

---

Townsend and others *vs.* Graves & Bostwick.

A party who is charged with a crime, or any other act involving moral turpitude, may give evidence of general good character to rebut the presumption of guilt.

But if the party accused does not think proper to resort to that species of evidence, the adverse party or prosecutor cannot be permitted to give evidence of general bad character.

Particular acts of bad conduct cannot be proved, even to rebut evidence of general good character.

The refusal of the chancellor to grant a feigned issue in a proper case, when directly applied for, and where, in the exercise of a sound discretion, an issue should have been directed, is good ground of appeal.

It seems that a party, who has not asked for an issue in the court below, cannot sustain an appeal on the ground that such issue would have been proper.

Issues should be directed only in those cases where there is a want of evidence, or where the evidence is contradictory, or so nearly balanced as to

render an open and rigid cross-examination of the witnesses, before a jury, necessary.

If the decree of the court below is affirmed, the respondent cannot have it corrected as to a point decided against him in the court below, and as to which no cross appeal has been brought by him.

August 27.

THIS was an appeal from a decision of the late equity court for the eighth circuit, dismissing the complainants' bill without costs. The defendant Bostwick was an agent of the managers of the literature lottery, and kept an office at Batavia; and the defendant Graves was either the agent or partner of Bostwick in the sale of lottery tickets at that place. The complainants, who constituted a company of 22 persons, contracted for the purchase of a package of 20 half tickets in class number two of the lottery of 1824. A certificate, containing the numbers of the tickets composing the package, was made out on the same sheet of paper which contained the subscription of the complainants for the tickets, and Metzer, one of the complainants, took a copy, or list of the tickets. The subscription for the tickets was made at Batavia on Wednesday, the 20th of October, 1824, the same day that the lottery was drawn in the city of New-York. But as the whole of the subscribers had not paid for their shares in the adventure, the subscription and certificate were retained in the hands of Graves, who signed the certificate as agent for Bostwick, until Monday thereafter. The bill charged that one of the combination numbers originally inserted in the list, or certificate, drew a prize of $10,000, of which the complainants were entitled to the one half; but that Bostwick, being at Canandaigua on Saturday afternoon, ascertained the result of the drawing, and came to Batavia on Sunday morning, when he and Graves fraudulently substituted another number in the package and certificate in the place of the prize ticket. The defendants by their answer denied the fraud, and insisted that the certificate delivered to the agent of the complainants on Monday was the original certificate made at the time the package was selected and put up on the Wednesday previous. They further stated in their answer that the defendant Bostwick obtained a statement of the result of the drawing on Saturday, at Canandaigua, from a traveller, which

he then supposed to be correct; but which was afterwards ascertained to be incorrect; that the correct result of the drawing did not reach Batavia until the next Tuesday, when the defendants for the first time knew that the ticket now claimed by the complainants had drawn a prize; and that if the result of the drawing had been according to the statement which Bostwick received at Canandaigua, the ticket thus claimed would not have been a prize. The proofs were taken in open court before Judge Birdsall, of the eighth circuit, who decided the cause in favor of the defendants, and dismissed the complainants' bill.

*H. Brown & M. T. Reynolds*, for the complainants.

*E. B. Allen & D. H. Chandler*, for the defendants.

THE CHANCELLOR. Upon the taking of testimony before the circuit judge in the court below, the complainants introduced R. S. Smith as a witness to show that the defendant Graves, about a year previous to the time when the controversy in this case arose, had been guilty of altering his account book for the purpose of defrauding a masonic lodge at Auburn. The judge received the testimony *de bene esse*, reserving the question as to its competency until the final hearing of the cause. It does not appear to have been expunged; and it now comes up as a part of the testimony read upon the final hearing in the court below. It probably was not taken into consideration by the circuit judge in the decision of the cause; and as he decided against the complainants, it did not become necessary for him to express any opinion at that time as to the admissibility of the testimony. As this evidence had no bearing whatever upon the matters in issue in the cause, it was wholly inadmissible, and ought not to have been received. Neither of the cases relied upon by the complainants' counsel sanctioned the introduction of this testimony. It is a general rule of evidence, that if a party is charged with a crime, or any other act involving moral turpitude, which is endeavored to be fastened upon him by circumstantial evidence, or by the testimony of witnesses of doubtful

credit, he may introduce proof of his former good character for honesty and integrity to rebut the presumption of guilt arising from such evidence which it may be impossible for him to contradict or explain. This principle is familiar to every lawyer who has had any thing to do with the administration of criminal justice. And in *Ruan* v. *Perry*, (3 *Caines' Rep.* 120,) cited by the complainants' counsel, the supreme court applied that well known principle to the case of a defendant in a civil suit, where the plaintiff was endeavoring to convict him of gross depravity and fraud, upon circumstantial evidence alone. It is not permitted, however, to the prosecutor, or the adverse party, in such cases to give evidence of the bad character of his opponent, unless the latter has himself laid the foundation for such testimony by giving proof of general good character. And even then the prosecutor, or adversary, cannot examine as to particular facts; the general character of the defendant not being put in issue, but coming in collaterally. (*Bull. N. P.* 296.) In the case of *Farrington* v. *Sinclair*, (15 *John. Rep.* 428,) also cited by the complainants' counsel, the evidence offered related to the same fraud which was the subject of inquiry then before the court, and which was in fact a part of the same transaction. The question as to the admissibility of the testimony was there so plain, that no intelligent court could ever have entertained a doubt on the subject.

This case turns wholly upon a question of fact, whether the combination number 1, 5. 7, was actually included in the package made up on Wednesday, the day of the drawing of the lottery, and of which a certificate was then prepared by Graves. On this subject there was the answer of the defendants, directly responsive to the bill, denying the fact; and the testimony of the defendants' clerk or journeyman, swearing positively to every material allegation in the answer upon that subject. In addition to this, there was the testimony of the two Giffords, who swear that the prize ticket was offered for sale on Saturday, and that it was refused, because its combination numbers were so low. And they both swear that they particularly recollect the number from the circumstance of hearing, a few days afterwards, that it had drawn a prize; and then

knowing it was the same ticket which had been offered for sale on Saturday and refused. On the other hand, I admit there were facts which formed strong grounds of suspicion that there was something wrong on the part of the defendants in relation to this business. But I think there was not sufficient to have authorized the circuit judge to say the defendants, and the witness Stow, had been guilty of wilful and deliberate perjury. And unless he arrived at that conclusion, it was impossible for him to make a decree in favor of the complainants.

The appellants suggest that a feigned issue should be awarded, if the chancellor has any doubts as to the question of fraud. In the case of *Leggett* v. *Ostrander*, in June, 1825, the court for the correction of errors reversed a decree of Chancellor Kent, and directed an issue, in a case of conflicting testimony, and where it appeared, by the decree, that an application for an issue was made to the chancellor on the hearing, and refused. It therefore may be considered as settled, that a refusal to grant an issue, in a proper case, when directly applied for, and where in the exercise of a sound discretion the court below should have directed such issue, is of itself a good ground of appeal. In that case, however, it appeared from the recitals in the decree that the chancellor considered it a case of nicely balanced testimony, and one of real doubt, and that the only grounds for refusing the issue, were the smallness of the amount in controversy, and the fact that the main question had already been tried at law, upon an indictment against the defendants for forgery. From the papers before me on this appeal, it does not appear that the complainants asked for an issue upon the hearing in the court below. In such a case, where the circuit judge had a right to decide the questions of fact without the intervention of a jury, I am not prepared to say that a party who did not ask for an issue can sustain an appeal, unless he is able to satisfy this court that the decision was wrong upon the question of fact. In this case, however, I think an issue ought not to have been awarded by the court below, on the application of the complainants, even if it had been asked for there. In *Whalley* v. *Whalley*, (3 *Bligh's P. C.* 16,) Lord Redesdale says, " It would be attended with infinite mischief, if courts of equity were to hesi-

tate in deciding questions when sufficient evidence is before them." Issues should be directed only in those cases where there is a want of evidence, or the testimony is contradictory and so nearly balanced that it is necessary to have an open and rigid cross examination of the witnesses before the jury who are to decide the question of fact upon their conflicting testimony. Here the complainants might have brought their action at law in the first instance, to recover the prize money, which had been received on the ticket in controversy, if they were entitled to the same. They elected, however, to proceed in the equity court, and to call upon the defendants as witnesses against themselves, to answer on oath as to the allegation of fraud. Under such circumstances, the complainants must be bound by the rule of this court which makes the answer of a defendant, responsive to the bill, evidence in his own favor, unless contradicted by the testimony of more than one witness. Taking these answers as evidence, so far as they are responsive to the allegations in the bill, in connection with the depositions of Stow and the Giffords, the weight of evidence is decidedly in favor of the defendants, upon the question whether the prize ticket was one of the package purchased by the complainants; although the loss of Metzer's copy and the burning of the book are not satisfactorily accounted for.

The circumstances of suspicion in this case were originally such as to justify the complainants in a belief that a fraud had been practiced upon them. I think, therefore, the circuit judge was right in dismissing the bill without costs, although they had failed to make out their case. But if the decree was wrong in this respect, as the defendants have not appealed, it cannot be corrected here. Notwithstanding there was sufficient grounds for suspicion at the time of filing the bill in the court below, to excuse the complainants from costs there, the same reasons do not hold good as to the costs of this appeal, which has been prosecuted by these appellants after all the facts of the case were fully ascertained.

The decree of the equity court must therefore be affirmed, with costs.