## S. W. L. KENNEDY v. S. C. UPSHAW AND JOHN P. COX.

(Case No. 5843.)

1. WILL—BURDEN OF PROOF—REVISED STATUTES, ARTICLE 1299—A paper offered for probate was alleged to be the last will of the testator. A counter application filed alleged that this paper was not the last will of the deceased, but that it, with another, which contestant offered for probate as a codicil, constituted the last will. The paper offered as a codicil was attacked as a forgery. *Held:*

    (1) The burden of proving that the paper first offered for probate was the last will, still rested upon those seeking its probate.

    (2) Having shown that it was executed in such a manner as to authorize its admission to probate, they might rest; those offering the codicil would then have the burden of proving that it was so executed as to make it a part of the will. If evidence was introduced sufficient, if unimpeached, to establish the codicil, it would devolve on those offering the will to overcome such evidence.

    (3) The burden of proof on the whole case rested upon those offering the first paper for probate, and they were entitled to open and conclude the argument.

2. SAME—EVIDENCE—ADMISSIBILITY—See facts for evidence held admissible under circumstances set forth in the opinion.

3. SAME—EVIDENCE—PHYSICAL CONDITION—STATEMENT OF PATIENT TO PHYSICIAN— See facts for statements made by the decedent to his physician in regard to his past physical condition, held admissible to show what that condition was. (Authorities cited.)

4. SAME—EVIDENCE—BILL OF EXCEPTIONS—See opinion for bills of exceptions to the admission of evidence, held to present no error.

5. SAME—IMPEACHMENT OF WITNESS—RESTRICTIONS—In the impeachment of a wit-

ness the inquiry should be confined to his general reputation for truth, and should not extend to his general moral character. (Boone *v.* Weathered, 23 Tex., 675, etc.)

6. SAME—EVIDENCE—FORMER TRIAL—See facts for testimony taken before the county court on the original trial, held admissible.

7. EVIDENCE—EXPERTS—QUALIFICATION—See facts for qualification of experts on handwriting, held sufficient.

8. SAME—PHYSICIAN—An expert is not permitted to testify to such things as are within the range of common experience, and may be as well understood by an unskilled person as by an expert. See facts for expert testimony of a physician, held admissible.

9. SAME—EFFECT OF EXPERT TESTIMONY—JURY—A jury may, and should, consider the opinion of an expert as it is their duty to consider other evidence, and if, in their judgments, in view of all the evidence before them, it is not entitled to credence, they may disregard it.

10. EVIDENCE—ADMISSIBILITY—See facts for evidence held admissible, and for evidence properly excluded.

11. WILLS—SUBSCRIBING WITNESSES—CREDIBILITY—Within the meaning of the law prescribing the qualifications of witnesses to wills, such witnesses as are competent to testify are deemed credible witnesses. See opinion for charge held misleading.

APPEAL from Johnson. Tried below before the Hon J. M. Hall.

S. C. Upshaw and Jno. P. Cox filed their application in the county court of Hill county on April 15, 1883, for the probate of the last will and testament of James H. Martin, deceased, wherein they alleged that Martin resided in Hill county, Texas, and died March 28, 1883, leaving an estate of about $8,000 or $10,000; that he left a will in which S. C. Upshaw and Jno. P. Cox were appointed executors, and that they were not disqualified from acting as executors. The will, which bore date February 8, 1883, was attached to and made part of the application, and appellees prayed for its probate and for letters testamentary.

On November 30, 1885, appellant filed an amended counter-application in which she alleged that on March 15, 1883 Jas. H. Martin made and published a codicil to his will of February 8, 1883; that this codicil, which was attached to and made a part of the application, together with the paper offered for probate by appellees, constituted the last will and testament of Jas. H. Martin; that by the terms of the codicil Martin expressly revoked that part of his will appointing Cox and Upshaw executors; that appellant was next of kin to decedent, residing in the state of Texas, was one of the devisees in the will, and was entitled to letters of administration with the will annexed. The prayer was for probate of the will and codicil, and appointment of appellant as administratrix.

The codicil was witnessed by appellant and her husband, N. B.

Kennedy, and it appeared that at the time it was executed, the testator also executed a deed of gift to the two children of the witnesses conveying to them a large portion of his property, which under the will was given to their aunt, one of his daughters.

Upshaw and Cox, on May 20, 1883, filed a replication in which they alleged that the instrument of writing purporting to be a codicil was never signed by J. H. Martin; that what purported to be the signature of J. H. Martin was not the genuine signature of J. H. Martin, but a forgery. On a hearing of the applications the county court admitted the will to probate and refused to probate the codicil, from which order and judgment S. W. L. Kennedy appealed to the district court of Hill county. Subsequently the venue was changed to Johnson county.

In the district court of Johnson county the trial resulted in a verdict, finding for the establishment of the will and against the codicil, and a judgment was rendered accordingly. The signature of the codicil was written in a smooth, regular hand, that to the will was not.

Third assignment of error: "The court erred in allowing applicants, Upshaw and Cox, to prove by Mrs. S. W. L. Kennedy, over objection of her counsel, that she did not kiss or shake her father's (J. H. Martin) hand, when he left her house to go to Wooten Wells, and also in allowing applicants to prove by counter-applicant, over objections of her attorneys, that at her house on February 8, 1883, at the time the original will was executed, and while her father was dictating the will to Capt. Upshaw she poured out some whiskey in a glass and gave it to her father, and that her father, J. H. Martin, stated that he ought not to drink it, and handed it to Capt. Upshaw, and that he placed it on the table; and that she at the same time and place stated to her father she hoped God would forgive him for she never could."

Assignment of error numbered "third A.:" "The court erred in allowing applicants, Upshaw and Cox, to prove by N. B. Kennedy on cross examination and over objection of counter-applicant, that the witness did not, after his return from Wooten Wells, where he had carried J. H. Martin, in Hillsboro, state to Dr. Scofield that Col. Martin wanted witness, Dr. Kennedy, to stay with and attend upon him, while at Wooten Wells, and that he told Col. Martin that his practice in Hillsboro was worth $30.00 per day, and that he would not stay with him unless he would agree to pay him $30.00 per day, which Col. Martin refused to do, and that he had returned home. And also in allowing said applicant, over objection of counter-applicant to prove by Dr. Scofield that the witness, Dr. N. B. Kennedy, at the time and place mentioned did make said statement."

Fourth assignment of error: "The court erred in allowing applicants, over objections of counter-applicant, to prove on cross-examination of Dr. N. B. Kennedy, that at the general election preceding the year 1881, J. P. Cox, one of the applicants herein, was a candidate for the office of sheriff of Hill county, and that Col. J. H. Martin was bitterly opposed to Mr. Cox, and that witness favored the election of Mr. Cox, and because he was a friend of Cox and favored his election Col. Martin became angry with him; that he did not get mad at Col. Martin; that he did not know whether Martin ate a meal at his house for a year or so before his last sickness."

Eighth assignment of error: "The court erred in permitting Cox and Upshaw, over objection of counter-applicant, to prove by G. H. Orenbaum that Colonel J. H. Martin, after he returned from Wooten Wells, stated to him (witness) that he (Martin) wanted to get back to witness' house where he could have attention paid him, because his daughter, Mrs. S. W. L. Kennedy, did not come into his room when he was at her house."

Fifth assignment of error: "The court erred in allowing applicants, Upshaw and Cox, over objection of counter-applicant, to prove by Dr. J. S. Scofield that he waited on J. H. Martin after his return from Wooten Wells, and that while attending him, Martin told him that he was sorry that he had gone to Wooten Wells, that his trip had made him worse; and also in allowing applicants to prove by Dr. Dudley that he attended Col. Martin in his last sickness, and that after his return from Wooten Wells, he stated to him that he (Martin) had been gradually going down ever since he had left Hillsboro."

The seventh error assigned was the admission by the court of evidence showing the value of the Martin estate in Hill county. There was evidence tending to show that the decedent intended to divide his estate equally between appellant and his other daughter, Mrs. S. A. D. Haigler. The will divided all the property outside of Hill county about equally between the two daughters. The deed of gift to the children of appellant transferred to them a large number of notes with vendor's liens on land in Hill county.

The witness Miles was introduced by appellant on the trial in the county court, and testified that he was present when the codicil was executed. On the last trial, in the district court, appellant did not introduce this witness or any part of his testimony. A portion of his testimony was offered by appellees for the purpose of contradicting appellant and her husband as to the manner and circumstances under which the codicil was executed, and was admitted over appellant's objection.

The court allowed the following witnesses to testify, as experts, on the question of whether or not the signatures to the will and codicil were made by the same person, they having qualified as here stated:

C. W. Riley: "I am tax assessor of Hill county; have a great deal of experience in the observation of signatures; as tax assessor of Hill county it becomes my duty to examine the signature of each party assessed."

C. N. Brooks: "I am a farmer; have been district and county clerk and justice of the peace, and have seen a great deal of hand-writing."

G. F. Sturgis: "I have been in the banking business and also as bank cashier fourteen years."

J. N. Duncan: "I have for the last ten or fifteen years been in the clerk's office and seen a great many hand-writings."

W. A. Jackson: "From 1869 to 1874 I was engaged in commission and grocery business and had a large correspondence and became acquainted with many hand-writings."

J. H. Johnson and E. B. Stroud had been merchants and book-keepers for years and had seen a great many hand-writings.

S. A. Reavis, had been district clerk, justice of the peace, and had a great deal of experience in examination of hand-writing.

The bill of exceptions, on which was based the sixteenth assignment of error was as follows: "The counter-applicant offered to read in evidence to the jury the answer to the seventh interrogatory to Dr. Willis, the physician in charge of J. H. Martin, at Wooten Wells, from the 2d to the 15th of March, 1883, which answers were as follows: 'At any time from March the 5th or 6th, Col. Martin could have written his name with ease and but little nervousness until the time I last saw him.' The question was as follows: 'State, from your professional knowledge of Col. Martin's condition, whether or not, in your opinion, there were times, while he was in your charge, when he could have written his signature with a pencil with a steady hand; that is, without the appearance of much nervousness.' To the introduction of which, applicants, Cox and Upshaw, objected upon the ground that the opinion of the attending physician in this respect was not admissible for any purpose. The objection was sustained."

The following interrogatory was propounded to Dr. Willis, and the answer excluded by the court: "Did Col. Martin at any time while under your charge say anything about the attention he received from his grandchild, Chester Kennedy, and how he would reward him? If yea, state as fully as you can all he said about it." The answer was as follows: "He did, several times; said Chester had been so good and kind to him and nursed him so well that he intended to pay him

well for his devotion and kindness to him. I remember to have said to him a time or two he ought to divide out with Chester, and better fix up soon and give the young man a start."

Appellees proved that on January 25, 1883, John P. Cox saw J. H. Martin sign his name on the back of five notes, and those signatures were shown to the jury as standards of comparison. These notes were also introduced to assist in proving the value of the decedent's estate, and to show the manner in which he divided it.

The court admitted in evidence, over objection of counter-applicant, the testimony of Dr. Scofield, that after Col. Martin had returned from Wooten Wells, and just after his death, Mrs. S. W. L. Kennedy told him in Hillsboro that the only objection she had to her father's will was that he had made Cox and Upshaw his executors, and that she hoped God would forgive her father, but that she never could.

*Poindexter & Padelford* and *Booth & Son*, for appellant, on the burden of proof, cited: 47 Tex., 624; Alstin *v.* Cundiff, 42 Tex., 453; Ney *v.* Rothe, 61 Tex., 374; Schoulher's Ex. and Admr., 71-82; Fisher's Dig., 7023; Hutley *v.* Grineslone, 5 L. R. P. Div., 24; 48 L. J. P. Div., 68; 41 L. T. S., 531.

On evidence tending to show the feeling between decedent and appellant, they cited : Blakey *v.* Blakey, 33 Ala., 611; Dotts *v.* Fetzer, 9 Pa. St., 88; 1 Greenl. on Ev., 462; 1 Whart. on Ev., 559 ; U. S. *v.* Dicknison, 2 McLean, 325; Goodall *v.* State, 1 Oreg., 332.

That decedent's statements to his physician as to his past physical condition, were not admissible, they cited : Inhabitants of Ashland *v.* Inhabitants of Marlborough, 99 Mass., 47-48; Lush *v.* McDaniel, 13 Ired. (N. C.) L., 485; Chapin *v.* Marlborough, 9 Gray, 244; Emerson *v.* Lowell Gas Light Co., 6 Allen, 146; Asbury Life Ins. Co. *v.* Warren, 22 Am. Rep., 560; Abb. Tr. Ev., 502, secs. 43, 45, p. 599; Hunt *v.* People, 3 Park (N. Y.), Cr., 569; State *v.* Davidson, 30 Vt., 377.

On the question of impeachment, they cited: 1 Whart. on Ev., 74, 50; Gough *v.* St. John, 16 Wend., 649. Floner *v.* Ins. Co., 6 Cow., 973; Humphrey *v.* Humphrey, 7 Conn., 118, 119; Townsend *v.* Graves, 3 Paige 453; Boon *v.* Wetherd, 23 Tex., 675; Pratt *v.* Andrews, 4 Comst., 493; Corning *v.* Corning, 6 N. Y., 97; Dain *v.* Wyckoff, 18 N. Y., 45; 18 Penn. St., 346; 7 Ind., 19; 81 Ill., 277; 1 Bush, Ky., 208; 26 Mo., 168; 65 Mo., 176; 57 Ind., 378; Cen. Rep., No. 16, vol. 1, p. 631; 34 Conn., 452; 8 Gill., Md., 357; David Ayers *v.* Duprey, 27 Tex., 594, Hartless *v.* State, 32 Tex., 89.

On the charge of the court, they cited : Redf. on Wills, 253; 1 What. on Ev., 291 and 400; Nixon *v.* Armstrong, 38 Tex., 297; Mathews *v.*

Marchant, 3 Deo. and B. (N. C.), L., 40; 6 Hill, (N. Y.) 534; 8 Mo., 733; 11 Conn., 432.

Jo. Abbott and S. C. Upshaw, for appellees, on burden of proof, cited: Beazley v. Denson, 40 Tex., 423; 1 Greenl. on Ev., 13 Ed., Art. 74.

On evidence showing the feeling between decedent and appellant, they cited: Johnson v. Brown, 51 Tex., 74; Jones v. McCoy, 3 Tex., 349; Watson v. Robertson, 15 Tex., 333; Henderson v. State, 14 Tex., 500-515.

On the charge of the court, they cited: Jarrell v. Lillie, 40 Ala., 271; Mays, Admr. v. Williams, 27 Ala., 267; Hopper, Admr. v. Ashley, 15 Ala., 457.

STAYTON, ASSOCIATE JUSTICE.—The statutes regulating the probate of wills require that the facts necessary to establish the will shall be proved to the satisfaction of the court. R. S., 1851. The evidence taken for the purpose of probating a will is required to be recorded in the minutes of the court. R. S., 1854. Wills cannot be admitted to probate upon the admissions of persons who may be interested in their establishment, and it may well be doubted if Rule 31, made for the government of district courts, has any application to proceedings instituted to probate wills. Art. 1299, R. S., provides that the party having under the pleadings the *burden of proof on the whole case* shall be entitled to open and conclude the argument.

The appellees, who offered the instrument. of date February 8, 1883, for probate, as the last will of James H. Martin, deceased, allege that it is the last will and testament of the testator, and the burden of proving the facts necessary to establish this rests upon them. They have the affirmative, and consequently the burden on this issue. The person who appears, in effect, to contest this, alleges that the paper so offered is not the last will and testament of the deceased, but admits that this paper, and another which she presents for probate, as a codicil, constitute the last will. The manner in which the negative of the fact alleged by the appellees is made, is unimportant. The burden of proving that the paper purporting to be the last will is such, still rests upon those who seek its probate.

When proof sufficient to show that the paper was executed under such circumstances, and with such formalities, as to authorize its admission to probate, was made, those offering it might rest; but so far the burden was upon them. After such proof was made, the person offering the paper claimed to be a codicil would have the burden of

proving that it was so executed as to make it a part of the will.    If
this was done the two papers would be probated as the last will, and
so, upon proof, the burden of which would rest upon one in part and
upon the other in part. When proof was made sufficient, if unim-
peached, to establish the codicil, then to sustain the averment that the
paper offered as the last will was such in reality, it again became in-
cumbent on those who offered it to produce evidence which would
overcome that introduced to establish the codicil.

They charged in this case that the codicil was a forgery, and the
evidence, if unimpeached, being sufficient to establish the codicil, the
burden of proving it to be a forgery was upon those who asserted it.
Thus it is seen that the *burden of proof on the whole case* did not, and
in the nature of things could not, rest upon those who sought to estab-
lish the codicil ; and the court did not err in refusing to permit them
to go forward with their evidence and to open and conclude the argu-
ment. The fact that the execution of a codicil operates as a republica-
tion of a will of which it, in legal effect, becomes a part when it clearly
identifies it, has no bearing upon the question before us.    Those per-
sons who offered the paper executed on February 8, 1883, allege that
to be the last will.    This is denied by those who offer the codicil, who
allege that the two papers constitute the last will. To invalidate the cod-
icil those who offer the instrument first executed as a will, allege that the
paper purporting to be a codicil is a forgery, and the evidence is of
such character as to leave no doubt, if the codicil be a forgery, that
forgery was committed by one or both of the persons whose names
appear as witnesses to it.

The paper executed on February 8, 1883, was executed at the house
of the two persons whose names appear as witnesses to the codicil,
the testator then being ill and an inmate of their house.    That paper
was executed openly and without any concealment; one of the bene-
ficiaries under it was opposed to the disposition which was made of
the testator's property by it, and from the time of its execution,
though the testator was ill and related to her by the nearest ties of
blood, pursued towards him a course of conduct evidencing an estrange-
ment of feeling, for which no other reason is shown than that the testator,
prompted by reasons the most cogent, had deemed it proper to bestow
upon another, as nearly related to him the largest share of his estate.
There is also evidence tending to show that before the will was exe-
cuted no such relations existed between the testator and the two per-
sons who were witnesses to the codicil as would be expected from their
near kinship by blood and marriage.

The will was executed at Hillsboro, and soon afterwards it was found necessary to remove the testator to Wooten Wells on account of his failing health. It is claimed that the codicil was executed at the latter place in the presence of the two persons at whose house the will was executed, and in the presence of a negro, and that it was written by one of the former, and signed by both of them as witnesses. One of these persons was a beneficiary under the will executed at Hillsboro, and the codicil in no way affected the interest she would take under the will.

It is claimed, however, that at the time the codicil was executed, and under the same circumstances, and with the same witnesses, the testator executed a deed of gift to the two children of the witnesses to the codicil, by which a large part of the testator's property, which under the will was given to another daughter of the testator, was disposed of. There were many persons at Wooten Wells at the time it is claimed the codicil was executed, but none of them, other than the persons before named were called to witness its execution, but it is claimed that this was at the request of the testator.

It appears that the two witnesses to the codicil, in consequence of several messages from the testator, so requesting, went from Hillsboro to Wooten Wells, reaching the latter place on March 14, 1883, in the morning, and it is claimed that the codicil was executed on the next morning, after which the testator, the two witnesses to the codicil, and one or two other persons left Wooten Wells for Hillsboro, which they reached the next day. The testator lived until March 28, 1883.

Under this state of facts we are of the opinion that any evidence introduced, which tended to show the state of feeling existing between the testator and the two witnesses to the codicil from a time anterior to the execution of the will until that date, which tended to illustrate the conduct of the parties, and which bore upon the probability or improbability of the execution of the codicil under the circumstances which are claimed to have attended its execution, was admissible. Such is the character of the evidence referred to in the third, third A, fourth and eighth assignments of error.

A declaration was made by the testator to the physician who had attended him before he went to Wooten Wells, and after his return, as to his condition while there, and this was admitted in evidence over the objections of the appellant. The declaration related to the condition of the testator at a time intervening between the services of the physician to whom made, related to no specific fact, but was most probably necessary to enable the physician to understand the patient's condition. The condition of the testator while at Wooten Wells was

an important inquiry in the case, as was it important for the physician, in view of after treatment, to know what the condition of the patient was during the different periods of his illness. The information was doubtless sought and given with a view to that.

The declaration made to the physician, was made under circumstances which render it free from suspicion of having been made with any other purpose than to inform him of that which it was necessary for him to know. The testator could not have expected that the declaration would ever become important on the question whether he executed the codicil. If he executed it, he could not have anticipated that its execution would ever be controverted. If he did not execute it, he could not have foreseen that a codicil would be set up of which he never had knowledge. It is often difficult to determine when evidence of this character is admissible, but we are of the opinion that offered in this case was. Insurance Co. v. Mosely, 8 Wall., 408; Beaver v. Taylor, 1 Wall., 642; Howe v. Plainfield, 41 N. H., 136; Railway Company v. Sutton, 42 Ill., 440.

It was proper that the jury should be placed in possession of such facts as would enable them to know what was the effect of all the papers claimed to have been executed at the time the codicil is claimed to have been executed.

Therefore, it was not error to admit the evidence showing the value of the testator's estate situated in Hill county, consisting of notes, secured by vendor's liens, and money. This evidence was proper to show what changes would occur in the disposition of the testator's estate as made by his will, if the codicil and deed of gift made to the two children of the witnesses to the codicil were established, both of them being attacked as forgeries.

It was proper that the jury should be placed in possession of every fact likely to influence the testator to change a will deliberately made, or that could give motive to any person to seek to change it by a forged codicil or other conveyance operating on property disposed of by the will. During the trial, a large number of witnesses were permitted to state that they knew the reputation for veracity of the witnesses to the codicil, and that this reputation was bad. The witnesses were interrogated in the usual manner, and were cross-examined by the counsel for the person seeking to establish the codicil as to their means of knowledge. In this cross-examination some of the witnesses stated that they had heard persons when speaking of the reputations of those witnesses, refer to the matters which gave rise to this litigation, but that they had heard other matters discussed, and could not

say that the reputation of which they testified grew out of the matters litigated in this action, or connected with it.

If we were to look alone to the statements made in the body of the bills of exception, we would strongly incline to the opinion that some of the witnesses testified to reputation which grew out of the facts on which this action is based, but these statements are qualified by the judge. The following are samples of the qualifications to the bills, made by the judge:

"The witness stated that other instances of a want of veracity were mentioned besides this case at the time witnesses' character for truth was discussed; that he could not say that it grew out of this case, etc. The court refused to permit any witness to testify who said the witnesses' character for truth had originated from this particular case, and several witnesses who so stated were not permitted to state what the reputation for truth was."

"The court permitted counter-applicants to subject witnesses to a most rigid cross-examination, and refused to let several witnesses testify who stated their knowledge grew out of this suit. The court thought that if the witnesses stated that it was discussed in connection with other transactions, it was then a matter for the jury, as the court would not pass upon the weight of evidence."

As the bills of exception present this question, we cannot say that the court erred in admitting the evidence. A large number of witnesses were permitted to state that they knew the reputation of the two subscribing witnesses to the codicil and deed of gift to their children, for honesty, and that this reputation was bad. This evidence could have been introduced for no other purpose than to impeach their testimony. This inquiry involved the whole moral character of these witnesses, and under the former decisions in this state should have been excluded.

In Boone v. Weathered, 23 Tex., 675, it was held, that in the impeachment of a witness the inquiry should be confined to his general reputation for truth, and that it should not extend to his general moral character. This ruling was approved in Ayers v. Duprey, 27 Tex., 600, and is in accordance with the great weight of authority, English and American. Humphrey v. Humphrey, 7 Conn., 118; Gough v. St. John, 16 Wend., 653; Bakeman v. Rose, 14 Wend., 110; Fowler v. Insurance Company, 6 Cowen, 675; Church v. Drummond, 7 Ind., 19; Gebhart v. Burkett, 57 Ind., 380; Crose v. Rutledge, 81 Ill., 267; Spears v. Forrest, 15 Vt., 437; Crane v. Thayer, 18 Vt., 168; Commonwealth v. Moore, 3 Pick., 196; State v. Howard, 9 N. H., 486; State v. Bruce, 24 Me., 72; Townsend v. Graves, 3 Paige, 456; Gilchrist v. McKee, 4

Watts, 381; United States *v.* Vansickle, 2 McLean, 219; Teese *v.* Huntingdon, 23 Howard, 2.

The objections urged to the reading of the testimony of the witness Miles, taken before the county court on the original trial, to probate the will and codicil, were correctly overruled. The evidence of the witnesses Riley, Brooks, Sturgis, Duncan, Jackson, Johnson, Stroud and Reavis, as experts, was admitted by the court below, and from the facts stated as to their qualification, we cannot say that there was error in this.

Dr. Willis attended the testator, as his physician, during the time he was at Wooten Wells, and stated very fully his condition as to nervousness while there, and we are of opinion that his answer to the seventh interrogatory, should have been received. This witness stated that "his improvement in point of nervousness was very great, he had but one nervous rigor during the time he was there, which was on the night of March 4, 1883. He was comparatively free from nervousness from March 5 to March 15, 1883. He wrote notes with a pencil. One time I remarked to him that his nervousness was much better as his hand was comparatively steady; as near as I can remember I think this occurred on March 11 or 12, 1883. I noticed his improvement more particularly in taking his meals, medicine and water; his hands were comparatively steady. He wrote two or three notes; seemed to do it with ease. This was a few days before I last saw him, and was done with lead pencil, and he was but very little nervous. I saw him professionally the day he left the Wells, which was March 15, 1883."

An expert is not permitted to testify to such things as are within the range of common experience, and may be as well understood by an unskilled person as by an expert. We cannot, however, say that the opinion which the witness gave related to such matters. It may be that the nervous affection of the testator was such as to be exhibited by his acts only when his hands and arms were in certain positions, while in an effort to use the hand and arm in some other way it would not be manifested.

As to such matters the skilled physician who knows the actual condition of the patient, is presumed to have more knowledge than is possessed by others, and to be able to give an opinion more likely to be correct than would that of a jury, formed solely from a general statement by the physician of the condition of his patient at a given time. The physician testifies upon the facts within his own observation, which, of themselves, may not be so fully appreciated as they ought to be, by a jury, from the description of the condition of the patient which the physician may give. Such testimony can be given no con-

clusive effect, and it rests with the jury, from all the evidence before them, to find the fact to be, as in their judgment, the evidence preponderates.

The jury may and should consider the opinion of an expert as it is their duty to consider other evidence, and if, in their judgment, in view of all the evidence before them, it is not entitled to credence, then they may disregard it. So much of the testimony of Dr. Willis, as related to declarations by the testator, showing affection for Chester Kennedy, and an intention to reward him for his devotion and kindness, was admissible, for it would have some bearing in illustrating the motive which may have influenced the testator to make the deed of gift to him and his sister, claimed to have been executed at the same time the codicil was executed. That deed of gift was of such a character, and so connected by the circumstances under which it is claimed to have been executed, and its subject-matter with the will and codicil, that any fact showing a motive for its execution was relevant.

The answer of the witness, however, seems to have been offered as an entirety, and was in part not responsive to the interrogatory. So much of the answer as was not responsive to the interrogatory was inadmissible for reasons other than that it was not responsive, and for this reason the answer when offered as an entirety was properly excluded. There was no error in admitting evidence tending to show that the deed of gift was a forgery. It may be that the five notes, bearing tranfers purporting to have been signed by the testator, were admissible for purposes other than to furnish writings upon which comparisons might be made, and we do not now deem it necessary to determine whether they would have been admissible for the latter purpose only. The declaration claimed to have been made to Dr. Scofield by one of the persons whose name appears as a witness to the codicil, made after the death of the testator, was relevant to one or more inquiries in the case, and therefore admissible.

The court gave the following charge to the jury: "If you believe from the evidence that J. H. Martin is dead, and that before his death he, on March 15, 1883, executed the instrument read in evidence and offered as a codicil, and dated March 15, 1883, and that at the time he was over the age of twenty-one years, and that he was of sound mind as hereinbefore explained, and that he signed the said instrument in the presence of N. B. Kennedy and S. W. L. Kennedy, and that N. B. Kennedy and S. W. L. Kennedy were at the time of signing of the codicil, if you find it so signed, over the age of fourteen years, and that they are creditable persons, and that they subscribed their names

to the same as witnesses in the presence of J. H. Martin, and at the request of J. H. Martin, then in case you so believe from the evidence, you will find that the instrument offered as a codicil was executed by J. H. Martin."

This charge was misleading, and required the jury to pass upon a fact which it was the duty of the court to pass upon, and which the court did pass upon, when the witnesses to the codicil were permitted to testify to the fact of its execution. Within the meaning of the law prescribing the qualifications of witnesses to wills, such witnesses as are competent to testify are deemed *creditable* witnesses. Under the charge given, the jury might have found every fact to have existed necessary to the probate of the codicil, and still have found a verdict against it, if in their opinions the witnesses to it were not in the popular sense of the terms *creditable persons;* may have found that the witnesses had stated the exact truth in reference to the execution of the codicil, and yet, that it was not entitled to probate, upon the sole ground that the witnesses to it were not persons to whose testimony credence would ordinarily be given.

Both parties manifest a desire that his case should here end; but in view of the fact that the trial was before a jury, for the errors mentioned it will be necessary to reverse the judgment of the court below and to remand the cause for another trial.

It is so ordered.

REVERSED AND REMANDED.

[Opinion delivered June 18, 1886.]