**TOLIVAR et al. v. HOWTH et al.**

No. 2998.

Court of Civil Appeals of Texas. Beaumont.

Jan. 8, 1937.

Rehearing Denied Jan. 20, 1937.

WALKER, Chief Justice.

C. R. Tolivar died in Jefferson county, Tex., on September 29, 1934. On October 2, 1934, C. W. Howth and J. S. Edwards filed application in county court of Jefferson county to probate a will of deceased, executed on the 16th day of April, 1927, giving half his property to his wife, Katherine Tolivar, whom he divorced in 1932, and the other half to his mother for life, with remainder to his brother, F. F. Tolivar. At the time of his death his mother and brother were the only persons interested in his estate under the statutes of descent and distribution. F. F. Tolivar, joined by his mother, filed their contest in the county court against the application to probate the will dated the 16th of April, 1927, on the ground that it was not the last will and testament of the deceased; that, on or about the last of October or the first of November, 1933, the deceased executed a new will, revoking all former wills, giving his estate to his brother, F. F. Tolivar, except as to certain small bequests. Contestants did not produce their alleged will in county court nor later in district court, but offered parol evidence in district court of its due execution. In county court no evidence was offered by contestants in support of their contest. On appeal to district court, contestants made the following concession and agreement in open court:

"Mr. Howth: We offer the will in evidence.

"Mr. Lewis: We admit that the will which is now offered—

"Mr. Howth: Yes, I will offer it, and you can admit its execution, or I will prove it.

"Mr. Lewis: We do not deny, because we have witnesses to the fact, we do not deny that Charley made a will in 1927, this will that we read to you, that it is executed in due and proper form, that it contains the provisions that are read to you. Mr. Howth and Mr. Edwards were the executors named in the will, without bond, and that will, if another will was not made, is still the will of Charley Tolivar, and we are offering the subsequent will, and we assume the burden of showing it was executed in due time.

"Mr. Howth: Your admission goes not only to the execution of the will of 1927, but the probate thereof as required by law in all its details, etc.?

W. R. Blain, of Beaumont, and Thomas B. Lewis, of Houston, for appellants.

Howth, Adams & Hart, of Beaumont, for appellees.

"Mr. Lewis: Yes, sir, in all its formalities, in other words, except for this subsequent will."

—followed by the introduction of the will dated April 16, 1927. Contestants then took the burden of supporting by evidence their alleged will. On conclusion of the testimony, the case was submitted to the jury upon the following charge:

"Gentlemen of the Jury:

"This case will be submitted to you upon special issues, your answers to which will constitute your verdict in this case.

"By the term 'preponderance of the evidence' is meant the greater weight of credible testimony.

"You, the jury, are the exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given the testimony, but the law you will receive from the court, which is given you in this charge, and be governed thereby.

"The contestants of the will of C. R. Tolivar, deceased, have, in open court, admitted the execution in proper form of the will of C. R. Tolivar, deceased, which is offered for probate by C. W. Howth et al. They allege, however, that the same was not the last will and testament of C. R. Tolivar, deceased, but that he executed another will in October or November, 1933, and contestants have assumed the burden of proving the execution of such alleged later will. You are, therefore, instructed that the burden of proof is upon Contestants to prove from the preponderance of the evidence the execution of said later will.

"Special Issue No. One:

"Do you find from a preponderance of the evidence, as that term has been herein defined, that the deceased, C. R. Tolivar, did, during the last of October, 1933, or the first part of November, 1933, in the presence of two or more witnesses, who subscribed the same as witnesses in his presence and at his request, execute a written will by the terms of which he bequeathed his property to his brother, Fred Tolivar?

"Answer 'he did' or 'he did not.'

"Issue No. 2.

"If you have found that the will alleged to have been made the last of October or the first of November, 1933, was made, then, in that event, and only in that event, answer the following issue:

"Do you find from a preponderance of the evidence that at the very time of making of the alleged will that the alleged testator, C. R. Tolivar, was of sound mind? Answer 'Yes' or 'No'.

"In this connection you are further instructed that the burden also rests upon the contestants to prove by a preponderance of the evidence that at the time of the making of the will in 1933, if one was made, that the testator was of sound mind at the very time of the making of such will.

"R. L. Murray, Judge Presiding."

To question No. 1 the jury answered: "He did not." Question No. 2 was not answered. On the verdict, the will dated April 16, 1927, was admitted to probate; the contestants have duly perfected their appeal to this court.

■ Contestants reserved the following exception to the court's charge:

"Now come the contestants in the above entitled and numbered cause and object to that portion of the court's charge wherein it instructs the jury that the contestants have assumed the burden of proving the execution of the alleged will in October or November, 1933, and that the burden of proof is upon the contestants to prove the execution of said later will by a preponderance of the evidence, in that the said charge lays undue stress upon whom the burden of proof rests and places a more onerous duty upon the contestants than the law imposes.

"2. Contestants object to said portion of the Court's Charge because it is a charge upon the burden of proof and the weight of the evidence."

The charge is not subject to the exception that it was "on the weight of the evidence"; nor was it objectionable "as a charge upon the burden of proof"; that is, the mere fact that the court charged on the burden of proof was not error. There was nothing in the charge to impress upon the minds of the jury that the court was of the opinion that the deceased did not execute the will offered by contestants. The proposition announced by Judge Leddy, speaking for the Commission of Appeals in Gilmer v. Graham, 52 S.W.(2d) 263, 265: "The primary object of the statute providing for the submission of a case upon special issues is to enable a party to procure a finding upon the facts by a jury without its knowledge of the legal effect of such finding. In other words, the jury is not presumed to know what issues are material to establish a plaintiff's

right to recover. Such a question is purely one of law. When a case is submitted upon special issues, it is the province of the jury to find the facts submitted to them as they may believe the evidence justifies. When such findings are made, it is for the court to determine the legal effect thereof," has no application to this case. Here, only one issue was before the jury, that submitted by question No. 1. In the presence of the jury, appellants admitted the due execution of the will of date April 16, 1927, thereby, in the presence of the jury, assuming the burden of proving the execution of the will offered by them. The charge did not inform the jury of any circumstance connected with the issue submitted that any juror with sense enough to find the front door of the court house did not already know; so, Judge Leddy's conclusion that the statute providing for the submission of a case upon special issues was "to enable a party to procure a finding upon the facts by a jury without its knowledge of the legal effect of such finding" has no application to this case. The jury was bound to know the effect of its answer to question No. 1. The charge may have unduly emphasized "the · burden of proof" as it related to appellants, but not to the extent of constituting error sufficient to reverse the judgment of the lower court. The following proposition advanced by appellants under their exception to the court's charge does not constitute error: "It was improper for the Court to tell the jury that the contestants had admitted the proper execution of the will offered for probate by appellees, or that they had alleged that it was not the last will of C. R. Tolivar, or that they had alleged he had executed another will and having told the jury what the issues were before them, it certainly was reversible error for the court to instruct the jury that Contestants assumed the burden of proving the later will." Appellants themselves, in open court, in presence of the jury, agreed to every fact and circumstance summarized and brought forward by this proposition as error.

On the evidence in this case, the jury was morally compelled to answer question No. 1 in the negative. The evidence convinces this court beyond doubt that the deceased did not execute a new will in October or November, 1933, revoking the will of April 16, 1927. True, contestants offered as a witness one Mrs. Day, who testified by depositions that she wrote the will offered by contestants at the request of the deceased; that he was sick in room No. 10 at Jefferson Hotel, a building owned by him, and called upon her to write his will; that she wrote it as he dictated it; that the will was witnessed by Jannie Crawford, F. H. Dozier, and Max Lehman; and these parties also testified as to the execution of the will and that, at the request of the deceased, they signed it as witnesses. The record as a whole, to the satisfaction of this court, demonstrates conclusively that these witnesses testified falsely, and that no such will was executed by the deceased. The deceased was a prominent business man in the City of Beaumont with large interests in various enterprises; he maintained a staff of stenographers, a well-equipped office, and a regular retained attorney. There is no circumstance in the record explaining why he would have called upon Mrs. Day to write his will and Jannie Crawford, Dozier, and Lehman to witness it. We take the following brief summary of the testimony, before us in two large volumes, from appellees' brief:

"The undisputed facts show that C. R. Tolivar had his attorneys, whom he had employed for many years, to prepare his will, dated April 16, 1927, and that the will was witnessed by one of his attorneys and by another party. Immediately after the death of C. R. Tolivar, F. F. Tolivar, instead of calling at the office of C. R. Tolivar's former attorneys, as requested, on the Monday morning following his burial on Sunday sought out another lawyer and had himself appointed administrator of the estate.

"The will of 1927 was duly presented and probated thereafter, and F. F. Tolivar appealed this contest to the district court. There was no contest of this will in the county court, notwithstanding all the persons, who it is claimed witnessed a subsequent will made and signed the last of October or first of November 1933, were in Beaumont at that time and for a long time thereafter. This will which F. F. Tolivar claims was made the last of October or first of November 1933, and under the terms of which gives·him full authority to manage the estate without any bond and bequeaths the entire estate to him, leaving out the former wife of· C. R. Tolivar and the mother of C. R. Tolivar as beneficiaries thereunder, has never been produced.

"This case was set for hearing in the district court of Jefferson County, Texas, on January 21, 1935, and was postponed

upon application of this appellant. It was again set for March 4, 1935, and postponed upon application of this appellant. It was again set for March 25, 1935, and postponed at the request of this appellant for April 22, 1935. On September 6, 1935, another date of setting the case was postponed upon application of appellant to September 30, 1935.

"The deposition of Mrs. Day was taken in California on March 26, 1935. The deposition of F. H. Dozier was taken on the 19th day of March, 1935, in Houston, and the deposition of Jannie Crawford was taken in Houston at the same time.

"F. F. Tolivar claims that Mrs. Day told him about the will three to five days after C. R. Tolivar's death. F. F. Tolivar also testified that F. H. Dozier, a witness to the will, went to work for him after C. R. Tolivar's death in the early part of 1935, and that he drove Dozier from Beaumont to Houston and from Houston back to Beaumont several times. His excuse for putting Dozier, the alleged witness to the will, to work at the ice plant in the early part of 1935, notwithstanding Dozier was a stranger to him, is because he was the only man who could do the work of insulating ammonia pipes, although later on, in his cross-examination, he admitted that there were other men who could do the work. The evidence shows that upon the eve of the setting of this case in March that Tolivar would take Dozier to Houston and when the case was postponed would then bring him back to Beaumont. The evidence further shows that a subpoena was issued, at the instance of the appellees in this case, for Dozier and ·that Dozier, tried to evade service, and that Fred Tolivar, although the circumstances show that he knew where Dozier was at the time the officer inquired of him, stated he did not know.

"Both Jannie Crawford's and F. H. Dozier's deposition showed they lived at one and the same place in Houston. Each of them denied that they had ever been married.

"Jannie Crawford testified that the last of October or first of November 1933, she stopped at the Jefferson Hotel in Beaumont; that she came over to Beaumont to look for a location for an automobile shop, and that she signed the will made by Tolivar at that time and place as a witness in room #10 of the Jefferson Hotel. She testified that she had been living on North Main Street in Houston about a year and a half before she came to Beaumont and signed the will as a witness, and that she had been living in Houston about two years.

"The testimony of B. F. Chambers, an employee of the appellant in this case, and an employee of C. R. Tolivar in his lifetime, shows that Jannie Crawford was living at the Jefferson Hotel in Beaumont in September 1933. No Register of the Jefferson Hotel was ever produced, but one was kept. The account book produced by the witness, Chambers, shows the payment of rent by guests of the Jefferson Hotel, and shows that Jannie Crawford was there· in September 1933, but does not show that she was there in October or November 1933, nor does it show that F. H. Dozier was there in October or November 1933.

"The testimony of J. A. Warren shows that Jannie Crawford, alias Dozier, was at the Jefferson Hotel the first part of the year 1933; that C. R. Tolivar had trouble with her and ran her away and told her he did not want her there any more and called the ˙police and had her arrested.

"The testimony of Jack Wier is that he knew Jannie Crawford, identified her picture, and said that she stayed at the Jefferson Hotel in 1933 up to September, or when beer was legalized, when she left the Jefferson Hotel and moved to Ainsworth's place. He also testified she had trouble ˙ with Mrs. Day and was put out of the hotel.

"Max Lehman testified that Jannie Crawford was at the Jefferson Hotel about two months before the will was signed; according to his testimony, he was called from his post of duty in making up trains to witness this will, running the risk of causing delay in the trains and reprimands, anywhere from five to sixty of which said reprimands would cause him the loss of his job. He testified further that he was on duty, according to the record, at the time he claims he signed the will as a witness. Mr. O'Rourke, his superior in the service of the railroad company, and who kept his time, gives the following dates as the dates on which Lehman was on duty in October and November 1933, as follows: October 1933, 1st, 6th, 7th, 8th, 12th, 13th, 14th, 15th, 20th, 21st, 22nd, 26th, 27th, 28th, 29th; November 1933, 3rd, 4th, 5th, 9th, 10th, 11th, 12th, 17th, 18th, 19th, 23rd, 24th, 25th, 26th.

"Both F. H. Dozier and Jannie Crawford testified that they were not man and wife and had never been, but the testimony of officer Allen, and the testimony of Glen Gallier shows that F. H. Dozier and Jannie Crawford were husband and wife.

"F. H. Dozier testified that his excuse for being in Beaumont the last of October or the first of November 1933, when he was called upon to witness the will of C. R. Tolivar, is that he was working for the North Main Finance Company, but the owner of the North Main Finance Company testified that Dozier never worked for the North Main Finance Company and never at any time came to Beaumont or elsewhere to deliver cars for that company.

"The repeated opinions expressed by C. R. Tolivar in his lifetime as to the incompetence, worthlessness and carelessness of his brother, F. F. Tolivar, show that he would not have bequeathed to him his entire estate and left it to him to manage as he saw fit, and leave out his mother, to say nothing of his former wife, who had helped him to make all that he possessed, and who, up to the time of his death, had received only a few hundred dollars from him.

"The court is referred to the testimony of B. F. Chambers. Mr. Chambers identified a large number of paid checks, all of which were signed by C. R. Tolivar personally, and a great many of which were all together in his handwriting, the dates of the checks being as follows: October 1933, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 23rd, 24th, 25th, 27th, 28th, 30th, 31st. The Sundays in October were: 1st, 8th, 15th, 22nd, 29th; November 1933, 1st, 2nd, 3rd, 4th, 6th, 7th, 8th, 9th, 10th, 11th, 13th, 14th, 17th, 18th, 20th, 21st, 22nd, 23rd, 25th, 27th, 28th, 29th, 30th. The Sundays in November 1933 were: 5th, 12th, 19th, 26th.

"We call the court's attention to the testimony of W. L. Pendrom, who identified deposit slips for deposits in the American National Bank, written all together in the handwriting of C. R. Tolivar, and he further testified that C. R. Tolivar usually made deposits in person, the dates of the deposit slips in the handwriting of C. R. Tolivar being as follows: October 1933, 9th, 10th, 11th, 13th, 14th, 16th, 17th, 18th, 19th, 20th, 21st, 23rd, 24th, 25th, 26th, 28th, 30th, 31st; November 1933, 1st, 3rd, 6th, 8th, 13th, 17th, 20th, 22nd, 24th, 27th.

"It was agreed on the trial of the case that the Southeast Texas Fair opened in Beaumont in 1933 on November 2nd. H. J. Hamm testified that he met C. R. Tolivar on the fair grounds on the opening day of the Southeast Texas Fair in Beaumont in 1933.

"Reta McNeil testified she rented a house from C. R. Tolivar on October 31, 1933, and saw him almost every day for a week or so after that, because he was trying to fix the house up, and that he was not sick.

"Maxine Simmons testified that she and Katherine and C. R. Tolivar went to the Jefferson Theater in 1933 when Duke Ellington was at the theater with his orchestra.

"Mr. F. G. Hervey, bookkeeper for the Jefferson Amusement Company, testified that Duke Ellington played in person with his orchestra in Beaumont at the Jefferson Theater starting October 28th and ending October 31st, 1933.

"Maxine Simmons testified that she was living with C. R. Tolivar and his mother on Pine Street during all of 1933, and prior and subsequent to that time, and that if C. R. Tolivar missed coming home for his dinner his mother would become worried and have her telephone to the ice plant to find out where he was and why he didn't come home to dinner; that she never heard of C. R. Tolivar having been sick at the Jefferson Hotel at any time.

"Simon Jones testified that he was night watchman for the Tolivar ice plant, which is in the Jefferson Hotel building downstairs, during all of the years 1933, 1934 and a part of 1935, and that he would go to room #10, the room set aside in the Jefferson Hotel for his own use, with C. R. Tolivar's permission, and change his street clothes for his working clothes every evening, leaving his street clothes in that room over night, and in the morning when he quit duty, would put on his street clothes and leave his working clothes hanging up in that room, and C. R. Tolivar was not sick in that room in October or November 1933, or any part thereof, or at any other time.

"Mary Rasberry testified that she was maid at the Jefferson Hotel during all of 1933, up to about a month before Christmas; that she was there during all of October and November 1933, and cleaned up the rooms in the Jefferson Hotel and that

Mr. Tolivar had room #10 at the hotel, but she never knew him to spend a night in that room; that Mr. Jones changed his clothes in that room; that she kept the room supplied with clean towels but never had occasion to change the bed linen.

"J. A. Warren testified that he was working for C. R. Tolivar at his office at the ice plant· in the Jefferson Hotel Building in Beaumont from about the middle of 1932 up to April or May, 1934, and worked during all of October and November 1933 in the office, and that it was his business to keep in touch with C. R. Tolivar at all times when he was in Beaumont and that he was not sick at the Jefferson Hotel at any time. He also testified that Simon Jones changed his clothes in C. R. Tolivar's room at that hotel twice a day during October and November 1933, as well as during all of that year.

"The evidence shows that C. R. Tolivar, the deceased, and his divorced wife, Katherine Tolivar, were the best of friends after the divorce; that she visited him in Beaumont and he in turn went up in east Texas to see her.

"The evidence shows that there was a credit on the books of C. R. Tolivar in favor of Katherine Tolivar in the sum of $5,000.00 that had been carried forward for several years.

"The evidence shows that C. R. Tolivar's business was in bad shape; that he was heavily in debt, and that in view of the shape of his affairs he could not divide up with Katherine at the time of the divorce and that he still regarded Katherine and himself as man and wife.

"Fred Tolivar came into possession of all the property, books, accounts and papers belonging to C. R. Tolivar immediately upon his death, and after his death moved away from C. R. Tolivar's residence some account books.

"The evidence shows that Katherine Tolivar was not only a wife but a real helpmate and business partner and did a man's work; that she superintended contract jobs, kept books, ran the ice plant and the farm."

 Article 3348, R.S.1925, provides: "Before admitting a will to probate, it must be proved to the satisfaction of the court: * * * 4. That the testator executed the will with the formalities and solemnities and under the circum-

stances required by law to make it a valid will."

The evidence before us invokes with great force the doctrine of Kelly v. Settegast, 68 Tex. 13, 2 S.W. 870, 873, where Judge Stayton, speaking for our Supreme Court, said: "This case comes before us surrounded with facts which call for clear proof. * * * As has been well said, the law does not presume fraud; but when circumstances throw suspicion on a paper offered for probate it does require clear proof. * * * The utmost good faith and fairness may have attended the entire transaction. * * * But this has not, in our opinion, been shown to be true in that clear and satisfactory· manner in which it ought to be shown under the facts attending the execution of the instrument."

In Jones v. Steinle (Tex.Civ.App.) 15 S.W.(2d) 164, 165, it was said: "* * * he [proponent] has not met the burden placed upon him by the statutes and shown the will to have been executed with· the formalities and solemnities required by law."

We quote as follows from Judge Short's opinion in Reinhardt v. Nehring (Tex.Com. App.) 291 S.W. 873, 875:

"The provision of the probate law to the effect that certain facts must be established to the satisfaction of the court before an instrument can be admitted to probate as a last will should be construed to mean that, before a court will be authorized to probate a will, proof of the affirmative of the several issues named in the statute must be tendered, and the evidence must be of such character as to satisfy the court of its probative value and force.

"Language of similar import in article 4632, supra, has been construed by the Supreme Court. * * * In Moore v. Moore, 22 Tex. 237, Justice Wheeler, in discussing the language of this statute last mentioned, says: 'There must be the "full and satisfactory evidence," and "the verdict of a jury"; both must concur, before the court can lawfully proceed to decree a divorce. It is to the mind of the court, of course, that the statute intends that the evidence shall be "full and satisfactory." Unless it be so, it is the duty of the court to set aside the verdict, and refuse a decree.'"

When the evidence in this case is weighed by the provisions of article 3348, as construed by the authorities cited above,

we say that no court would admit to probate the will tendered by the pleadings and testimony of appellants, and that, on their oath, the jury was compelled in good conscience to give a negative answer to question No. 1. In view of this conclusion, the fact that the charge of the court overemphasized the issue of "burden of proof" was immaterial and does not constitute error.

■ Appellants complain that the court erred in permitting appellees to ask Mrs. Day: "Is it not true that Jannie Crawford is a woman who makes her living by prostitution?" To which question the witness answered: "I don't know." It is a general principle of law that a female witness cannot be impeached by proof that she is a common prostitute when that fact is collateral to the issue at bar. Ayres v. Duprey, 27 Tex. 593, 86 Am.Dec. 657; Boon v. Weathered's Adm'r, 23 Tex. 675; Kennedy v. Upshaw, 66 Tex. 442, 1 S.W. 308; San Antonio & A. P. R. Co. v. Blair (Tex.Civ.App.) 184 S.W. 566. But neither the question nor the answer put that issue in controversy.

■ Evidence went to the jury that Jannie Crawford was a prostitute, but it came into the case on appellants' cross-examination of one of appellees' witnesses; this evidence was excluded and stricken from the record on appellants' motion. Since appellants themselves brought out this fact, it was not error for the court to refuse to give their requested written charge to the jury not to consider it.

■ There was no error in receiving in evidence a photograph of Jannie Crawford "identified and showing upon its face that it had been taken at the Identification Bureau of the Beaumont Police Department." There was no evidence to show that the picture was taken at the police station, and no evidence to show that Jannie Crawford was arrested for a misdemeanor in connection with the picture. The picture was properly received in evidence on the issue of the identity of Jannie Crawford, which was material on her credibility as a witness. ·She testified by depositions in Houston that she had never been married to F. H. Dozier. The evidence was to the effect that in Beaumont she was known generally, and to the police department, as the wife of F. H. Dozier, and that the deceased ran her out of his hotel and forbade her to return. So, it

was a material inquiry whether the woman who said in Houston that she was Jannie Crawford and not Mrs. Dozier, and who testified that in the Jefferson Hotel in Beaumont, at the request of the deceased, she signed his will as a witness, was the same person known as Mrs. Dozier in Beaumont and who was run out of his hotel by the deceased.

■ The testimony relating to the general character of Jannie Crawford as a citizen, complained of by appellants, for the most part was introduced by them; we are not prepared to say that all this testimony was not admissible on the issue of the execution of the will. It is our belief that this testimony does not fall within the rule insisted upon by appellants that a female witness cannot be impeached by proof that she is a common prostitute. We think appellees were entitled to show who Jannie Crawford was, her business, her relations to the deceased, his conduct towards her, on the issue whether or not, under the surrounding facts, he would have asked her to witness his will disposing of a large estate, leaving his mother destitute, and giving his property to his brother, in whom he had but little confidence. However, the proposition of law discussed in this paragraph is not necessary to a decision of this case.

Contestant, F. F. Tolivar, was a witness on his own behalf. Appellants make the following points against his cross-examination by appellees:

■ (a) "It is error to interrogate a witness as to immaterial and irrelevant matters for the purpose of impeachment and to discredit the testimony." This assignment or proposition is too general to constitute the basis of error.

■ (b) "It was improper for the court to permit Proponents' counsel to ask the appellant, F. F. Tolivar, on cross-examination as to why his attorney, Mr. King, wanted to take the depositions of appellants' witnesses, Jannie Crawford and F. H. Dozier (both of whom lived in Houston), it being an effort to discredit the said witnesses, and appellant was not supposed to know what prompted or controlled his attorney's action in the conduct of the case." (c) "Counsel for Proponents having offered testimony with reference to the absence of Ann Rakness (Day), Contestants' witness, and having asked F. F. Tolivar as to why she did not appear in

person and testify in this case, which was offered for the purpose of and calculated to discredit said witness, it was error for the Court to refuse to permit S. E. Landry, to testify for Contestants, as to when and under what circumstances Mrs. Rakness left Beaumont and her reason for doing so. Which testimony, if permitted, would have tended to rebut the testimony offered by Proponents, and the inference which the jury may have drawn therefrom." The matters brought forward by proposition (b) were proper subjects for cross-examination; proposition (c) is too general to constitute error.

■ It was not error to cross-examine appellants' witness Max Lehman, who claimed to have witnessed the alleged will, on the following matters: (a) As to the whereabouts of Jannie Crawford at various times; (b) "as to whether or not he and S. E. Landry (another witness for appellants) went to Kountze and testified in behalf of Mrs. Day in a suit she had in Hardin County"; (c) "as to whether or not Mr. O'Rourke, his superior in the railroad service, knew that he was in the habit of running off on errands and attending to other matters while waiting for the arrival of the switch engine at the Santa Fe depot"; the witness Lehman had testified for appellants that he did that very thing when he went to the Jefferson Hotel to witness the alleged will.

■ B. F. Chambers was a witness for appellees on the former trial; on this trial he denied having given certain testimony. The proper predicate having been laid, the court stenographer was called and read from her notes the testimony given by the witness on the former trial. The stenographer was not called to give the testimony to B. F. Chambers as original evidence, but only in his impeachment. It is true that appellees put Chambers on the witness stand, but he was a friend of appellants; appellees had not talked to the witness on this trial before he was called, believing he would testify as on the former trial. Surprised at his testimony, they had a right to impeach him. Appellant F. F. Tolivar denied on cross-examination that witness Dozier, one of the alleged signers of the will, tried to evade service of subpoena issued for him at the request of appellees; it was admissible to prove that fact on the issue of Dozier's bias or friendlessness in favor of appellants. Dozier having testified that he came to Beaumont in October, 1933, to deliver some cars for the North Main Finance Company of Houston, and, having registered at the Jefferson Hotel, was called upon by the deceased to witness the will in controversy, it was competent to prove that he never worked for North Main Finance Company of Houston, and was never intrusted by them with the delivery of any cars in Beaumont; this testimony was an impeachment of his explanation of his presence in Beaumont at the time of the execution of the alleged will. The court did not err in permitting Officer O. E. Allen to testify that F. H. Dozier went to the police station in Beaumont and made certain statements—these statements are not shown by the proposition—with reference to his relation with Jannie Crawford. Appellants introduced in evidence the petition in the divorce of C. R. Tolivar v. Katherine Tolivar, and the settlement agreement upon the granting of the divorce; the court did not err in refusing to permit appellants to offer evidence upon which that divorce proceeding was based.

Finding no error in this record, the judgment of the lower court is in all things affirmed.

Affirmed.