**PACIFIC MUT. LIFE INS. CO. OF CALI-FORNIA v. SCHLAKZUG.**

**No. 11616.**

Court of Civil Appeals of Texas. Galveston.
April 6, 1944.

Rehearing Denied June 15, 1944.

Andrews, Kelley, Kurth & Campbell and F. L. Andrews, all of Houston, for appellant.

E. R. Campbell, of Houston, for appellee.

CODY, Justice.

This is an action to recover accident benefits under a policy of insurance brought by the beneficiary, who alleged that the insured died as a result of an infection after pulling a hair from his nose.

As his cause of action the beneficiary alleged in his petition: "That while the insured was shaving in his home on or about January 25, 1940, he plucked a hair from his nose, bringing about immediate pyogenic infection of said nose and his body. That said infection brought about an early death of the insured, towit: within three days, and said infection and said death was brought about by the plucking of said hair in said nose, which was accidentally caused solely through bodily, external, violent and accidental means."

The insurer defended upon the following provision of the policy as relieving it from liability under the policy: "The accident benefits of this policy do not cover loss of life or disability, caused or contributed to, directly or indirectly, in whole or in part by disease, ptomaines or bacterial infection (except pyogenic infection which shall occur simultaneously with and through an accidental cut or wound)." And in its answer the insurer pled that the loss sued on was due to a risk or cause coming within said exception to liability under the policy.

The case was tried without a jury, and judgment was rendered for the beneficiary. In response to the insurer's request, the court filed conclusions of fact and law. The following statement of facts is taken therefrom:

That the insured pulled out a hair from the right nostril of his nose on January 23, 1940. And that as a result there immediately arose a cut, laceration or wound, which occurred accidentally and unexpectedly. That as a result thereof, and as a part thereof, and in connection therewith, there was at once introduced into the tissues of the nose certain pyogenic organisms, commonly known as septic. This brought about a pyogenic infection of "blood poisoning" from which the insured died on January 28, 1940. That early on the morning of January 24th, the nose of the insured was swollen and inflamed, showing the infection to be the result of the cut, laceration or wound, which was not the necessary, expected or usual result from the pulling of the hair, but was unexpected, extraordinary and very rare. Nor was the infection the necessary, expected or usual result of pulling the hair, nor of the wound, but was unexpected, extraordinary, unusual and very rare. That the death of Aaron Slater was the result, solely and directly, from said cut, laceration or wound, and the infection resulting therefrom, and independently of all other causes; and that said cut, laceration or wound, and the infection resulting therefrom, were bodily injuries effected solely through external, violent and accidental means. The court found $1250.00 to be reasonable attorney's fees.

The first point on which the insurer or appellant predicates its appeal is: "This case should be reversed and rendered because the loss alleged by plaintiff was not covered by the policy sued upon in that the infection which resulted in the insured's death did not result from an accidental cut or wound."

We are concerned in this case with but two of the provisions of the policy. The insuring clause, reading:

"The * * * Company * * * hereby insurers against (1) loss of life, limbs or sight, as hereinafter set forth, resulting directly and indirectly of all other causes, from bodily injuries effected solely through external, violent and accidental means."

The other provision of the policy with which we are concerned is the exception to liability pled by appellant in its answer, and set forth above.

The foregoing insuring clause is similar in all material respects to the one considered by the Supreme Court in the case of International Travelers' Ass'n v. Francis, 119 Tex. 1, 23 S.W.2d 282.

The clause was there held to insure against the loss of life resulting from an intentional act, such as pulling a tooth, because such a result was so rare, unusual and extraordinary as to constitute the loss of life from bodily injuries effected solely through external, violent and accidental means. Assuming that the court's finding to the effect that the insured's death resulted from intentionally pulling a hair from his nose is supported by the evidence, then, under the authority of the Francis case, such death was covered by the insuring clause. Numerous other decisions to the same effect might be cited. We will cite additionally, however, only the case of Bryant v. Continental, etc., 107 Tex. 582, 182 S.W. 673, L.R.A.1916E, 945, Ann.Cas.1918B, 517.

Appellant does not deny that under the authority of the Francis case the loss here sued for was covered by the insuring clause of the policy. But it contends that the exception which it invoked in its answer defeats any recovery on the policy. And appellant further contends that a like exception was considered in the Francis case, and that the Supreme Court held that if the same had appeared upon the face of the policy (instead of in the by-laws) that it would have there defeated recovery. Since the Supreme Court held that the exception (because it appeared only in the by-laws and not upon the face of the policy) formed no part of the contract, the same was not before the court for construction. Nor is the same set out in the opinion of the Supreme Court. Therefore the statement to the effect that if the exception could be considered it would defeat recovery is obiter dicta. Nevertheless we have compared the exception here invoked by appellant with the exception in its various forms as set forth in the opinion of the Court of Civil Appeals in the Francis case (260 S.W. 938), and we do not regard it as being substantially similar to the one here considered.

■ When appellant admits that the loss sued for in this case is covered by the insuring clause, it yields up the case. Because the language of the exception was selected and inserted for the evident purpose of preventing a conflict between the insuring clause and said exception. That is to say, the exception provides for instances where the insurance benefits shall not be applicable, whereas the insuring clause provides for the instances where they shall. Whereas accident benefits are provided for loss of life by accidental means, it will be noted that the instances which are excepted from accident benefits are losses resulting from natural causes—diseases, ptomaines or bacterial infection. However, the exception clause does not stop there, for, if it did, it would except from the contract of insurance risks which the insurer had agreed to cover. In other words, death from bacterial infection may be death from a natural cause, or it may be under such circumstances as was present in the Francis case, death brought about by accidental means. Hence the exception to the exception in order to limit the instances where accident benefits were not to be paid to cases where death or disability resulted from natural causes.

■ If there can be said to be any doubt that the exception to the exception was intended merely to prevent a conflict between the insuring clause and the exception, then we have a doubtful provision, and it is well settled that an exception to a contract of insurance must be construed most strongly against the insurer and in favor of the insured. 24 Tex.Jur. 704, 705; National Surety Co. v. Chalkley, Tex.Civ.App., 260 S.W. 216, 219. So construed, the exception to the exception must be construed to leave the coverage in question in force and effect.

We overrule appellant's Point 1.

We take up next appellant's point 4. In so doing, we follow the order in which appellant presents its points.

It is: "This case should be reversed and rendered because the trial court, over proper objection, admitted hearsay testimony of statements made by the deceased as to how the injury occurred when such statements were made twenty-four hours to three days after alleged injury, and were not shown to be a part of the res gestae."

The evidence of appellee shows that on the morning of January 24, the insured, on coming down to breakfast, stated "yesterday * * * he pulled a stinking little hair out of his nose." The cook employed in insured's home also testified she heard him on the morning of January 24, say "he plucked a hair from his nostril." Dr. Freundlich also testified for appellee that the insured stated on the morning of January 27: "This is what I get for pulling a hair out of my nose."

When such evidence was admitted it was objected to as being hearsay and was not a part of the res gestae.

Dr. Taylor testified that, in his opinion, when he found a pimple in insured's nose on the morning of the 24th, it had been there more than twenty-four hours. And Dr. Logue's opinion, on the morning of the 25th, was that the infection had been present at least forty-eight hours.

Somewhere Wigmore has said that the hearsay rule and its exceptions grew up contemporaneously. Certainly a rigid adherence to a rule which rejects all hearsay would work a denial of justice in many cases. And in no case more so than in that of a victim of accident who survives it but a short while. When his statements are objected to as being hearsay it is not possible, as in the ordinary case, to meet the objection by bringing him into court. Generally speaking, such declarations, if they are to be admitted, must be admitted as res gestae.

■ "* * * The rule admitting spontaneous declarations meets the needs of justice when other evidence of the same fact cannot be procured, and the modern tendency is toward the extension of the rule. The result has been a very general recognition of *spontaneity* as a sufficient substitute for the requirement of *contemporaneous connection,* and the establishment of a rule to the effect that an unsworn statement is evidence of what it asserts, when it is so connected with the transaction as a whole that the utterance may fairly be regarded as an expression of feeling forced from the declarant by the pressure of the circumstances under which it was made, rather than a narrative of thought." (Emphasis supplied) 32 C.J., par. 47.

■ The admissibility of res gestae rests largely in the discretion of the trial court. Texas Emp. Ins. Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787, 790, and cases there cited. The cited case contains a good statement of the doctrine of res gestae and its application, and is here cited generally on the subject.

■ The evidence here was such that the court could conclude that the deceased had no swelling in his nose or face when he ate supper, and was then all right. The pulling of the hair from the nose would cause an abrasion, opening, or wound in the nose at the point where the hair was, and probably caused the pimple found at Dr. Taylor's office the next morning, from which there was a slight drainage the following morning, and, through that abrasion, the way was opened into the tissues of his nose for the entry of the germs causing the blood poisoning. The insured pulled the hair while shaving before going to bed on the 23rd. He could not have known of the injury until he waked up the next morning and saw the swelling and felt the pain. The insured at the first opportunity, which was at the breakfast table, after he realized that his nose was hurt, explained to his brother and to the cook that his swollen nose, which was painful, was caused by his pulling the hair therefrom the night before. Whether the statement sprung from spontaneity, or reflection, would be a matter of opinion. The trial court considered that, under the circumstances, it was natural for the insured to make the statements to the effect that the condition of his nose was caused by the pulling of a hair therefrom, and that the statements were the result of spontaneity. We cannot hold that he violated his judicial discretion.

Appellant's fourth point is overruled.

In its fifth point appellant contends this case should be reversed because the court, over the seasonable objection of appellant, admitted hearsay evidence by a physician of a statement by the deceased as to how the injury occurred, when such statement was made approximately five days after the injury, and not made for the purpose of diagnosis or treatment.

While the insured was in the hospital he was seen by Dr. Freundlich, who testified for appellee, that on the morning of January 27th, which was the fourth day after the hair was pulled, the insured said to him: "This is what I get for pulling hair out of my nose."

■ This answer of the doctor was admitted in evidence over the appellant's objection that, in connection with any statement made by the patient to the doctor, it is admissible only for the purpose of showing the treatment the doctor gave or the basis he used in reaching his conclusion about the case, but is not admissible as evidence of the truth of the statement. The court let the evidence in generally. Appellant relies on Newman v. Dodson, 61 Tex. 91, that this was error. The evidence should have been limited as requested by appellant. But this case was tried be-

**984**

fore the court, and not before a jury. It was merely cumulative of the other evidence heretofore discussed. Besides, it must be presumed that the court did not consider such evidence as establishing the truth of such statement. We do not think the case should be reversed for such error, because it was harmless.

Appellant's fifth point is overruled.

Appellant's points 2 and 3 are as follows:

"Point 2. This case should be reversed and rendered because there was no evidence of any accidental cut or wound or that the infection which resulted in the death of the insured occurred simultaneously with and through an accidental cut or wound, as required by the policy.

"Point 3. This case should be reversed and rendered because there is no evidence to support the trial court's Findings of Fact Nos. IV to XI, inc., to the effect that the insured pulled a hair from his nose on or about January 23, 1940; that as a result of which septic germs entered causing immediate infection, an unexpected, extraordinary and very rare result; and that the death of the insured was the result 'solely and directly from said cut, laceration, or wound and the infection resulting therefrom and independently of all other causes; and that said cut, laceration, or wound, and the infection resulting therefrom, were bodily injuries effected solely through external, violent and accidental means.' "

The evidence shows that the insured was healthy, except that he had a weak heart, and the weak heart was not a factor in the case.

The history of the pulling of the hair has been sufficiently adverted to. On the morning following the pulling of the hair the evening before, the insured visited Dr. Taylor's office, and an infected pimple was found in his nose, and the doctor treated it. On the morning of the 25th Dr. Logue found the pimple (among the hairs in the nose), and removed the core from the opening in the pimple. He testified that if a hair is pulled from the nose a small break in the skin would result, through which germs may enter.

There was no evidence of any other kind to account for the origin of the infection. What was said in the Francis case relative to the pulling of the tooth is equally applicable here relative to the pulling of the hair. And we think no good purpose would be served in extending this opinion by going over the same ground here, as was covered in that case by the Supreme Court.

We overrule Points 2 and 3.

Appellant's sixth point is:

"This case should be reversed because the trial court erred in permitting a witness to answer a question as to what would be a reasonable attorney's fee to the plaintiff's attorney in this case, over a proper objection that the question included the statement that this case would undoubtedly be appealed to the Court of Civil Appeals and to the Supreme Court."

Appellant's point seven is as follows:

"This case should be reversed because the amount of attorney's fees as fixed by the trial court is excessive."

The face of the policy was for $3,000. Suit was filed July 6, 1940. The trial was begun on November 10, 1943, and consumed a little more than a day. The evidence in the statement of facts covers some ninety pages. There is no evidence in the record as to the time spent in preparation by appellee's counsel for the case. The amounts involved, not counting attorney's fees, were approximately $4,000.

There are various elements involved in arriving at what is a reasonable attorney's fee in any particular case. While the time required may be a factor, it is certainly not a controlling one. It may require a specialist in certain litigation much less time to prepare a case for trial than it would require a general practitioner. But no one would contend that a specialist, because he is a specialist, should receive less compensation for his services. There was ample evidence before the court to warrant the finding of $1250 attorney's fee, which was the sum awarded. This award appears not to be out of line in comparison with other awards of attorney's fees in similar cases. We must assume that the court considered only the evidence properly before him in determining the proper award. But in the nature of things such evidence, when produced before a judgment, is advisory. It cannot be supposed that the court is a tyro on the subject. We cannot hold that the award was excessive.

We overrule Points 6 and 7.

The judgment should be affirmed, and it is so ordered.

Affirmed.