UNIVERSAL LIFE & ACCIDENT INSURANCE COMPANY, Appellant,

v.

M. N. BURDEN, Appellee.

No. 15748.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 26, 1956.

Coleman & Whitten and Royce Whitten, Denton, for appellant.

R. B. Gambill and John L. Sullivan, Denton, for appellee.

BOYD, Justice.

Appellant Universal Life & Accident Insurance Company appeals from a judgment in favor of appellee M. N. Burden for $1,000, being the face amount of a policy of life insurance issued to his wife, Charlotte L. Burden, together with interest, penalties, and attorneys' fees.

After answering appellee's petition with a denial of liability, appellant sought judgment canceling the insurance contract.

Appellee, as agent for appellant, wrote the application for the policy. He was named as beneficiary. It was a nonmedical application. Appellee did not obtain his wife's answers to the questions in the application, but supplied the answers himself. She only signed the application. Appellant had furnished appellee with an "Agent's Manual" which, with reference

to nonmedical applications, contained the following: "'Duty of the Agent—222. It is obvious, therefore, that the company must depend upon the Agent to faithfully ask each and every question required to be answered by the applicant and to record all the answers and give any other information he may have regarding an applicant's insurability, * * *.'" On the application, and above appellee's signature as agent, were these words: "Applicant seen in person, his answers to the above questions fully recorded, and his signature witnessed this 10 day of May 1954. Witness to applicant's signature." The policy was issued on May 24, 1954. Mrs. Burden died on October 11, 1954. It was a twenty payment policy, the annual premiums being higher than those for an ordinary life policy for the same amount of insurance. The application was not attached to or made a part of the contract.

The jury found: that the insured was in sound health when the policy was issued; that the answer "Yes" written by appellee to the question in the application, "Are you now in good health and free from the effects of any illness or injury?" was not false; that the answer "None" written by appellee to the question in the application, "What illness or injury have you ever had which caused you to be confined to bed or hospital, or to be absent from work, or to consult a doctor? Give details here:" was false; that appellee did not intentionally make such false answer to induce appellant to issue the policy; and that $500 would be a reasonable fee for appellee's attorneys.

By points for reversal, appellant contends that there was no evidence, and the evidence was insufficient, to support the jury's finding that the insured was in sound health on the date the policy was issued; that there was a principal-agent relationship between appellant and appellee and that appellee cannot recover (1) because he violated his duty to his principal in that he failed to propound to

the insured the questions in the application and to obtain her answers thereto; (2) that he represented to appellant that the answers on the application were the answers of the insured and concealed from appellant the fact that he had not propounded the questions to the insured, such representation being relied upon by appellant and the same being false; and (3) because appellee acted in a dual relation in that he represented the insured without appellant's consent in a matter where the interests of the insured and appellant were conflicting; that the judgment for attorneys' fees was not supported by proper pleading or competent evidence; and that the court erred in overruling appellant's motion for mistrial.

The policy provided that "No obligation is assumed by the Company prior to the date hereof, nor unless on said date the Insured is alive and in sound health. Should the Insured not be alive or not be in sound health on the date hereof, any amount paid to the Company will be returned."

The court defined "sound health" as "a state of health free from any disease or ailment that seriously affects the general soundness and healthfulness of the system; that is, that the insured be not afflicted with a disease or bodily infirmity of a substantial nature, which affects insured's general health, or which materially increases the risk to be assumed by the insurer."

Appellee testified that his wife was working when the application was signed on May 10, 1954, and when the policy was issued on May 24, 1954; that she had worked for the same employer for more than seven years; that she worked "every day" in May, June, July, August, September, and until October 5, six days before her death; that so far as he knew she was in good health during that time and had fully recovered from any previous illness she might have had. A woman friend and neighbor of the insured testified that she saw her every day and that the insured was very active in church work; that they were together in church every Sunday and attended church socials and other affairs together once or more each week; that she never heard the insured complain of any serious illness, and never knew her to miss any church function because of illness. The insured's employer testified that she missed only 24 hours of regular work during the fifteen months preceding October 5, 1954; that in September, 1954, she worked overtime every week except one; and that she was a very steady and dependable employee. Her physician, who died before the trial, testified by deposition that he had seen and treated the insured for different ailments occasionally for several years; that about ten years before her death she gave birth to a stillborn child; that about a year later she had a miscarriage; that she had had surgery; that she had a cystic ovary and other disorders; that he had never known her to have any serious illness or disease; that she was working all the time; that he did not see her between October 1953 and July 1954, but that so far as he knew she was in good health during that time.

 We have no difficulty in reaching the conclusion that the evidence which the jury accepted was sufficient to support the finding that the insured was in sound health, as defined in the charge, when the policy was issued. Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; National Life & Accident Co. v. Muckelroy, Tex.Civ.App., 40 S.W.2d 1115; Vann v. National Life & Accident Ins. Co., Tex.Com.App., 24 S.W.2d 347; American Nat. Ins. Co. v. George, Tex.Civ.App., 22 S.W.2d 704; American Nat. Ins. Co. v. Bailey, Tex.Civ.App., 3 S.W.2d 539. A physician called by appellant, who never saw the insured, testified that he had examined the diagnostic chart made by her physician, and that in his opinion it reflected that she was not in good health on May 10 and May 24, 1954. This evidence seems not to be sufficient to overcome even the testimony of

the lay witnesses, since the jury accepted their testimony. Kennedy v. Upshaw, 66 Tex. 442, 1 S.W. 308; Banco Minero v. Ross, 106 Tex. 522, 172 S.W. 711; American Nat. Ins. Co. v. McKellar, Tex.Civ. App., 295 S.W. 628; Coxson v. Atlanta Life Ins. Co., supra.

■ Considering appellant's points involving the principal-agent relationship between it and appellee, and the alleged violation of appellee's fiduciary duty, it is seen that appellee's interest in the transaction was not concealed. Appellant knew that appellee was its agent when he wrote the application, that the insured was his wife, and that he was the beneficiary.

Appellee testified that he was instructed by appellant's district manager to take out insurance on his wife and son; that it was mentioned several times; that his wife was heavily insured through her employer, and had about all the insurance he and she thought they could pay for; that the district manager told the insured that "it would look good for me and would help the company" if insurance was obtained for her and their son; that he wrote applications for policies on the lives of his wife and son and the policies were issued; that the district manager told him when writing applications "unless it was chronic, like heart trouble or something, to put, 'No'. * * * if he appeared to be in good health and nothing that I could see or do about myself— * * * to put 'No,' there"; that he had been an agent for two other insurance companies and that most companies required listing of illnesses within the last five years; that he did not know that his wife had a cystic ovary at the time the application was made; that he thought she had seen a doctor three or four times in a period of several years; that the only time he had ever taken her to a hospital was in August 1954, when she had a crick in her neck; that she had seen many applications and he had no reason to read the questions to her, and he thought that applied to people he did not know.

While the jury found that appellee's answer was "false" to the question whether illness had ever caused the insured to be confined to bed or to a hospital, or to be absent from work, or to consult a doctor, it further found that such answer was not intentionally made to induce appellant to issue the policy. The application gave the name and address of the insured's doctor.

■ The adjective "false" is used in different senses. In connection with a statement, it may be equivalent to "intentionally untrue," as involving evil intent or turpitude; or it may be equivalent to "erroneous" or "incorrect." 35 C.J.S., False, p. 495. By finding that the "false" statement was not intentionally made to induce appellant to issue the policy, it appears that the jury acquitted appellee of any fraudulent purpose. It would seem to be tantamount to a finding that the statement was false in that it was "incorrect," but not "fraudulent," or made with evil intent.

In Rockford Life Ins. Co. v. Tschiedel, Tex.Civ.App., 61 S.W.2d 536, 537, writ refused, the court said:

"It is clear that an insurance agent cannot represent his insurance company in securing an insurance policy in which he has a direct interest adverse to his company, undisclosed to his principal. In such cases it is not necessary to show actual fraud, but the law will strike down such a contract on the grounds of being against public policy. [Authorities cited.]

"However, in the case at bar it was conclusively shown by the evidence that E. L. McClure, who was general agent for appellant, directed Daimwood and Russ, before this policy was written, that in the event they wanted to write a policy on a man who was indebted to the bank for the protection of the bank, (Daimwood and Russ being officers and stockholders in the bank and appellant's agents for soliciting insurance) to write the policy payable to the man's estate and after the policy was issued to have it assigned to the bank. This instruction by the general agent was suffi-

cient to take this transaction out of the general rule and in the absence of actual fraud this policy cannot be canceled."

■■ "Actual fraud" has been defined as "intentional fraud, an intent to deceive being an essential element thereof. It means fraud according to the common conscience, and that the party charged therewith was inspired by a deliberate, fraudulent purpose to injure and deceive the party complaining; it implies deceit, artifice, and design, and imports the active operation of the mind; it consists in deception, intentionally practiced to induce another to part with property or to surrender some legal right, * * *." 37 C.J.S., Fraud, § 2(b), p. 210. We think the burden was on appellant to secure a finding that appellee, in failing to disclose that he did not propound the questions in the application to his wife, and in representing to appellant that the answers on the application were the answers of the insured, was guilty of actual fraud, that is, that such representation and concealment were made with evil intent, and for the purpose of obtaining an advantage over appellant, before it was entitled to cancellation of the policy or to defeat recovery thereon.

■ On the question of attorneys' fees, appellee pleaded that he was entitled to recover "reasonable attorneys' fees, * * * for the services of his attorneys in filing and prosecuting this suit, and representing the plaintiff in connection therewith in the trial court, and appellate courts, if an appeal should be taken by either party hereto; * * * the sum of $400 is a reasonable attorneys' fee for the prosecution of this suit through the District Court, and that an additional fee of $500 should be allowed as attorneys' fees in the event of an appeal from the judgment of this Court to the Court of Civil Appeals." One of the attorneys for appellee testified that with the possibility of an appeal, the sum of $1,000 was a reasonable attorney's fee; that he considered $500 to be a reasonable fee for

the trial in the District Court, and that a reasonable fee for handling probable appellate work would be an additional $500. No objection was made to this testimony. We think error is not reflected in this connection.

■ The motion for mistrial was predicated upon an assertion by appellee's attorney while testifying on the issue of attorneys' fees that he had personal knowledge that the case would be appealed regardless of the outcome. Appellant promptly objected and asked for a mistrial. Said the court: "I will overrule the motion to declare a mistrial. I will instruct the jury not to consider the statement of some matters within the personal knowledge of the witness with reference to the appeal, not consider that; I will sustain the objection to it." We do not think the harmful effect, if any, of the testimony complained of was such that it could not be removed by the instruction of the court. Pacific Mut. Life Ins. Co. of California v. Schlakzug, Tex. Civ.App., 180 S.W.2d 980.

The judgment is affirmed.