**Alvin CANDELA, Appellant,**

v.

**Catherine A. STEIDLE et al., Appellees.**

**No. 517.**

Court of Civil Appeals of Texas, Corpus Christi.

July 9, 1970.

Rehearing Denied Aug. 18, 1970.

Farrell M. Smith, of Smith, Smith & MacManus, Corpus Christi, for appellant.

Allison, Maddin, White & Brin, Inc., Corpus Christi, for appellees.

OPINION

NYE, Justice.

This case is a declaratory judgment action brought to construe a series of agreements as they relate to an oil and gas transaction. All of the parties involved stipulated that the instruments in question were unambiguous. Plaintiff and defendants filed motions for summary judgment. The trial court granted the defendants' motion and entered judgment that plaintiff take nothing. Plaintiff Alvin Candela has appealed.

In March 1968 the plaintiff and defendants entered into an agreement for the pur-

chase, development, operation and resale of two oil and gas leasehold estates in San Patricio County. Catherine A. Steidle, defendant, furnished the entire purchase price of Fifty Thousand Dollars ($50,000.-00) and received from plaintiff a conveyance of an undivided ¾ths working interest in the leases. The plaintiff retained the other ¼th interest of the total ⅞ths working interest. The agreement between the parties was set out in a written contract. After the leases were acquired the plaintiff and defendants began to use their efforts to either sell or borrow funds against the leases as contemplated by the agreement. In May of 1968 it became necessary to borrow $25,000.00 from the First State Bank on a short term basis in order to operate the leases. On May 13, 1968 the parties entered into a second written agreement. As a part of this agreement, the parties agreed to pledge their respective interests in the leasehold estates to the Bank and assign the income from production under the lease to further secure the $25,000.00 note. Continuing the agreement provided that:

"2. Both Parties agree to make diligent efforts to borrow additional funds from other sources by pleding (sic) an interest or interests in order to repay the money advanced by CATHERINE A. STEIDLE.

3. In the event an additional loan cannot be obtained, both Parties agree that they will make their best efforts to sell a one-half (½) of seven-eighths, (⅞) Working Interest owned by CATHERINE A. STEIDLE for a sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) and that all of those proceeds shall be paid over to CATHERINE A. STEIDLE.

4. If no funds have been obtained by either sale or by borrowing on or before July 15, 1968, then and in that event, both Parties agree to sell the entire seven-eighths (⅞) Working Interest to any interested Party on the best possible basis, but for not less than a total of SEVENTY-FIVE THOUSAND DOL-LARS ($75,000.00). The first SEVEN-TY-FIVE THOUSAND DOLLARS ($75,000.00) derived from any such sale shall go to CATHERINE A. STEIDLE in repayment of funds advanced and risks assumed. The remaining proceeds, if sold for more than SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), shall be shared equally by ALVIN CANDELA and J. A. KUSH individually for their efforts.

5. If no sale can be effected, and no loan can be obtained, as contemplated by Paragraph 2 herein, on or before July 15, 1968, then, and in that event, ALVIN CANDELA agrees to convey his undivided interest in the above described leases and leasehold estates to CATHERINE A. STEIDLE without further consideration and shall be released of his obligation to the First State Bank.

6. Not withstanding anything herein to the contrary, no Party shall receive any portion of the income of either lease until CATHERINE A. STEIDLE has been reimbursed for the FIFTY THOUSAND DOLLARS ($50,000.00) she has advanced and paid."

On May 16 the parties amended the May 13th agreement which included the following paragraph:

"5. If no sale can be executed and no loan obtained, as contemplated by Paragraph 2 herein, on or before July 15, 1968, then, and in that event, ALVIN CANDELA agrees to convey his undivided interest in the above described leases and leasehold estates to CATHERINE A. STEIDLE without further consideration. In such case CATHERINE A. STEIDLE agrees to assume the remaining indebtedness, if any, owed to FIRST STATE BANK, and agrees, in such case, to indemnify and hold ALVIN CANDELA harmless for any responsibility as to the payment of the remaining balance, if any, due and owing on said indebtedness."

On July 15, 1968, no loan or sale had been obtained for the properties. Whereupon

the appellant assigned and conveyed his undivided one-fourth (¼) working interest by warranty assignment to the defendants. Six months later, on January 16, 1969, the defendants sold the entire seven-eighths (⅞) working interest for a total consideration of $99,950.00. Plaintiff contends that the provision in Paragraph 4 of the May 13 agreement gave him the right to one half of the gross amount of the money obtained from the sale of the properties over and above the $75,000.00.[1] The defendants argue that by construing all these instruments and all of the provisions in such instruments together, the plain intent of the parties is reflected in plaintiff's assignment of the leases to defendants on July 15, 1968. This assignment conveyed all of plaintiff's right, title and interest in and to all of the properties involved. Therefore defendants contend that the plaintiff was not entitled to any of the proceeds of the sale of the properties. We agree.

The agreement of May 13 amended and amplified the parties' agreement of March 12, 1968. It recognized that it was the intention of the parties that they would borrow funds with the properties as collateral. This was to be done in order to repay defendant Steidle the money she advanced for the purchase of the properties. The agreement further stated that because outside financing had not been obtained, and because additional funds were needed to operate the leases (and to acquire equipment), the parties thereby agreed to pledge their interests in the leasehold estates. Continuing the agreement stated that the parties would assign the income from the sale of oil and gas to further secure the $25,000.00 loan from First State Bank of Corpus Christi, and that they would use the proceeds from such loan for operating, developing, and promoting the properties.

Paragraph 2 of the May 13 agreement stated that the parties would attempt to borrow money from other sources in order to repay the money advanced by defendant Steidle. This the parties were never able to do.

The third paragraph of this agreement stated that if they were unable to obtain an additional loan they would use their efforts to sell one half of the seven-eighths working interest (out of defendant's Steidle's ¾ interest) for the sum of $100,000.00, with all of such proceeds to be paid over to defendant Steidle. This never did take place.

Fourth, the agreement provided that if no funds were obtained by either borrowing or by sale by July 15, 1968, then the parties agreed to sell the entire seven-eighths interest owned by both of them on the best possible basis, but for not less than $75,000.-00. If the interests were sold for more than $75,000.00, then the proceeds above that amount would be divided equally. This never did take place before the July 15, 1968, deadline.

In Paragraph 5, it was stated that if no sale could be arranged, and if no loan could be obtained as contemplated by Paragraph 2 by July 15, 1968, then the plaintiff agreed thereby to convey his undivided interest to defendant Steidle without further consideration. The amended provision number 5 specified that Steidle would agree to assume the remaining indebtednesses owed to the First State Bank and Steidle agreed to indemnify and hold plaintiff harmless for any responsibility as to the payment of the remaining balance due and owing on the indebtednesses.

In the assignment dated July 15, 1968, (but admittedly executed in August of 1968) the plaintiff assigned, granted, sold, transferred and conveyed to the defendant Steidle his undivided one-fourth (¼) interest in the subject mineral leases and estates, together with all the personal property used or obtained in connection therewith, and *all other rights or interests which plaintiff*

---

1. Plaintiff claimed one half of difference between $99,950.00 and $75,000.00, i. e. $12,475.00. That this was not to be subject to any operating expenses incurred during the interim.

*had in said leases and leasehold estates under the terms of the original assignment of March 15, 1968, from Phillips Petroleum Company to the plaintiff.* (Emphasis supplied.)

The assignment in question goes on to state that the plaintiff covenants and warrants with reference to the interest in the land, that he is the lawful owner and has the right to sell and convey the same and does bind himself, etc.; to warrant and forever defend the same against the claims all persons whomsoever. (The instrument was subject to an oil payment not pertinent herein.)

The assignment specifically provides that the defendant Steidle is to expressly assume the indebtednesses due the bank *and all accounts payable to all parties* for materials furnished and services rendered, and further *agrees to indemnify and hold the plaintiff harmless for any responsibility for payment of any of the remaining indebtednesses on the note or accounts.* (Emphasis supplied.) This assignment was executed by the plaintiff and notarized by his attorney. In the letter of transmittal dated August 7, 1968, from plaintiff's attorney, it was stated that the assignment was delivered to the attorney for defendant Steidle " * * * on the condition that a release of Alvin Candela (plaintiff) by Sinclair Oil & Gas Company be made in the same language as the other releases of personal liability of Alvin Candela by Sinclair Oil and Gas Company of proof that the sum of $2,440.40 has been paid. I am delivering this to you *only on this condition and further upon the condition that you will not deliver this assignment to Catherine Steidle or Joe Kush* (defendants) *until this is done.*" (Emphasis and parenthesis supplied.) It was undisputed the above conditions were met.

■ We hold that the assignment from plaintiff to defendant Steidle conveyed all of the interests owned by the plaintiff in the leasehold estates. The plaintiff did not except or reserve anything from the as-signment other than the right to be indemnified and held harmless as to the debts set out in the agreement and in the letter of transmittal. The instruments themselves speak logically of the transaction as it occurred.

We do not find the contract, the amendments, or the assignment to be ambiguous. If the parties intended that the plaintiff was to have one half of the proceeds over $75,000.00, such a sale would have had to have taken place prior to plaintiff's unconditional assignment of his interest to defendant Steidle, or reserved and set out in the assignment.

■ Appellant's second point and one in which this Court made specific inquiry during oral argument was on the question of fraud. In a post submission reply brief, plaintiff makes reference to evidence in certain depositions in which he contends relates to fraudulent conduct on the part of defendants. We have examined the evidence in the most favorable light to the plaintiff-appellant as we are required to do. We fail to see any material misrepresentation that would in fact have induced action on plaintiff's part which would in any way have damaged him. See 25 Tex.Jur.2d Fraud and Deceit § 13–32, pp. 625–662 and cases cited in 18 Tex. Digest, ☞3, pp. 202–3, Elements of actual fraud. Plaintiff's reference to the specific evidence concerns several debts allegedly unknown to the plaintiff at the time of the conveyance of plaintiff's one-fourth interest to the defendant Steidle. However, these debts were assumed by defendant Steidle and the assignment obligates the defendant to indemnify plaintiff and hold him harmless. This could not be a basis for wrongfully inducing the plaintiff to convey his one-fourth interest to Steidle nor is this alleged by plaintiff to be the situation. Appellant's first three points are overruled. This makes it unnecessary for us to consider his fourth point relative to exemplary damages.

The judgment of the trial court is affirmed.