In re Irving Isaac GREEN, Debtor,

HENNESSY CADILLAC, INC., Plaintiff,

v.

Irving Isaac GREEN, Defendant.

Bankruptcy No. 79–03191A.
Adv. No. 79–0066A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

July 15, 1980.

248

Virginia A. Bonner, Thompson & Bonner, P.C., Decatur, Ga., for Hennessy Cadillac, Inc.

Wayne G. Anderson, Decatur, Ga., for Irving Isaac Green.

## ORDER

HUGH ROBINSON, Jr., Bankruptcy Judge.

Plaintiff's complaint to determine the dischargeability of a debt commenced the above-styled adversary proceeding. This matter came on regularly to be heard before this Court on April 25, 1980. Having heard the testimony of the witnesses and the arguments of the parties and having reviewed the briefs and pleadings on file, the Court makes the following decision:

## FINDINGS OF FACT

The findings of fact are adopted substantially from the stipulation of facts submitted by the parties to this dispute.

1. Irving Isaac Green, a physician, (hereinafter referred to as "Debtor") and Hennessy Cadillac, Inc., (hereinafter referred to as "Plaintiff") entered into a lease agreement on a 1979 Cadillac on May 7, 1979.

2. The motor vehicle lease required Debtor to maintain certain kinds of insurance on the Cadillac including property damage liability and insurance to cover loss or damage to the car resulting from collision or upset. Plaintiff was to be an additional insured under the policy.

3. Debtor had an insurance policy with Government Employers Insurance Company, (hereinafter referred to as "GEICO") which named Plaintiff an additional insured for bodily injury and uninsured motorist coverage. This policy was subsequently cancelled for nonpayment of premiums.

4. Debtor thereafter obtained a second policy from GEICO on the subject vehicle. Plaintiff was not an additional insured under the property damage coverage provided by this second policy.

5. A loss was incurred on the car in the amount of $1,023.95 less the insurance deductible.

6. The repairs to the Cadillac were completed by Plaintiff.

7. Debtor was requested to pay for the repairs at the time he retrieved the Cadillac. Upon being told that Debtor would have to collect from his insurance before he could pay, Mr. Cecil B. Hayes, secretary-treasurer of Plaintiff allowed Debtor to leave with the car.

8. The only representation made by Debtor to Mr. Hayes concerning the insurance coverage on the Cadillac was that Debtor had not received his insurance proceeds and he did not have sufficient funds to pay for the repairs himself.

9. Debtor requested a letter of proof from Plaintiff that repairs had been completed on the vehicle. A letter of proof, dated September 19, 1979 was written by Mr. Hayes. This letter was presented by Debtor to GEICO for the purpose of obtaining payment for the repairs.

10. GEICO issued a check on October 5, 1979 in the amount of $847.95 payable to Debtor and Plaintiff.

11. Debtor subsequently returned his check to GEICO and requested the issuance of another check payable only to Debtor. This request was complied with and another check, payable only to Debtor, was issued by GEICO on October 15, 1979.

12. Debtor's insurance claim was paid under the second policy.

13. On October 18, 1979 the check was presented for payment by Debtor. The proceeds thereof were not paid to Plaintiff.

14. Shortly after Debtor received the second check, he was notified by a lawyer representing Physicians and Surgeon's Hospital of the hospital's intention to sue if Debtor did not comply with his contractual obligation to pay the hospital $500.00 a month.

15. The debt owed by Debtor to Plaintiff has not been paid.

16. Debtor filed a voluntary petition in bankruptcy on October 29, 1979.

17. On December 27, 1979 Plaintiff filed a complaint to determine the dischargeability of the debt owed by Debtor for the car repairs. It is alleged that Debtor induced GEICO to cancel the first draft payable to both Debtor and Plaintiff and reissue a second draft payable only to Debtor by making false representations calculated to deprive Plaintiff of payment for repairs to the leased vehicle. Plaintiff contends that the debt owned by Debtor to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### APPLICABLE LAW

The pertinent part of 11 U.S.C. § 523(a)(2)(A) reads:

"(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual from any debt—

(2) for obtaining money, property, services, or an extension, renewal or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . ."

This section is the successor of Section 17(a)(2) of the Bankruptcy Act. Most of the existing law relating to the dischargeability of a debt under Section 17(a)(2) is incorporated into 11 U.S.C. § 523(a)(2). Thus case law construing Section 17(a)(2) may be referred to by the Court to aid its interpretation and application of Section 523(a)(2). *In re Jones*, 3 B.R. 410 (W.D.Va. 1980).

■ Plaintiff alleges that Debtor falsely represented to Plaintiff that the car repairs would be paid from insurance proceeds. It is further alleged that Debtor obtained the insurance money from GEICO by false pretenses. In examining Debtor's conduct, the Court must be guided by the rule that exceptions to the dischargeability of a debt are construed strictly against the creditor's objections and liberally in favor of the bankrupt. *In re Knight*, 421 F.Supp. 1387 (M.D.La.1976) affirmed 551 F.2d 861, 862 (5th Cir. 1977); *In re Dolnick*, 374 F.Supp. 84 (N.D.Ill.1974).

■ A false representation or false pretense under Section 523(a)(2)(A) must be of a kind involving moral turpitude or intentional wrong. Fraud implied in law which may exist without imputation of bad faith or immorality is insufficient. *Sanitation Recycling, Inc. v. Jay Peak Lodging Association, Inc.*, 428 F.Supp. 1022 (D.Vt.1977); 3 *Collier on Bankruptcy* (15th Edition), ¶ 523.-08[4], p. 523–39.

The Court will first address the allegation that Debtor falsely represented to Plaintiff that the repairs would be paid from insurance proceeds.

Debtor testified that when he picked up the Cadillac he presented his insurance policy number to Plaintiff's cashier and was told that Plaintiff did not handle insurance claims. The following testimony of Debtor exemplifies his understanding of the method by which payment for the repairs was to be made:

"We had gone through a considerable amount of trouble and inconvenience to me to arrange to do—to handle the problem in the way it was finally arranged.

Everybody agreed, I thought, to the best of my knowledge, that I would be responsible to pay the bill as it was billed to me on a monthly bill by Hennessy and that I would worry about collecting the money from the insurance company . . ."

(Transcript, page 69)

According to the testimony of Mr. Hayes the only representation made by Debtor to Mr. Hayes concerning the insurance coverage on the Cadillac was that Debtor had not received his insurance proceeds and he did not have sufficient funds at the time to pay for the repairs himself. There is no suggestion that Debtor told Mr. Hayes that the insurance proceeds would be transferred to Plaintiff. This Court finds no basis on which to conclude that Debtor obtained the return of the Cadillac by falsely representing that his insurance proceeds would be turned over to Plaintiff as payment for the repairs.

Plaintiff also alleges that Debtor obtained the insurance proceeds by false pretenses. When asked to explain why he requested GEICO to cancel the check payable to Debtor and Plaintiff and to issue another check payable only to Debtor, Debtor testified as follows:

"Because the payments on that bill that was billed to me was not due until October 31st. The draft was issued on the 10th-on the 5th, the first one. Okay? Can you conceive of the possibility that I might need funds between that date and the 31st for some other purpose and that I could anticipate having additional funds come in late in the month so that I could take care of Hennessy's bill on the 31st . . .?

The debt owed by Debtor to Plaintiff has never been paid. Debtor testified that at the time he received the second check from GEICO it was his intention to make payment to Plaintiff. However he was notified by a lawyer representing Physicians and Surgeon's Hospital of the hospitals' intention to sue if Debtor did not comply with his contractual obligation to pay the hospital $500.00 a month. This obligation precluded Debtor's immediate payment of his indebtedness to Plaintiff.

The Court cannot conclude that the insurance money was obtained by false pretenses. As the only named insured under the second policy, Debtor was the only person entitled to the insurance proceeds. Furthermore Debtor's testimony evidenced a sincere desire on Debtor's part to pay Plaintiff for the work performed on the Cadillac. Debtor apparently thought that he was to be billed by Plaintiff for the repairs and that he would have the responsibility for obtaining reimbursement from GEICO.

The party challenging the dischargeability of a debt bears the burden of proof. Rule 407 of the Bankruptcy Rules; *In re Wray*, 1 CBC 2d 59 (M.D.Tenn.1979); *Sanitation Recycling, Inc. v. Jay Peak Lodging Associates, Inc., supra*. There is no evidence that Debtor engaged in any conduct involving moral turpitude. The Court concludes that Plaintiff failed to prove that Debtor obtained property by false representations and false pretenses.

## CONCLUSIONS OF LAW

1. Debtor did not falsely represent to Plaintiff that he would transfer the insurance proceeds received from GEICO to Plaintiff as payment for the repairs to the Cadillac.

2. Because Debtor was the only named insured under the insurance policy, he was the only person entitled to receive the insurance proceeds for GEICO.

3. Debtor did not obtain the return of the Cadillac by false representations.

4. Debtor did not obtain the insurance proceeds by false pretenses. It is therefore

ORDERED that the debt owed by Debtor to Plaintiff shall be and same is hereby discharged.