In re Jimmy Wayne OGG and Caren Sue Ogg, d/b/a Tascosa Gulf Service, Debtors.

PRIDE FUELS, INC., Plaintiff,

v.

Jimmy Wayne OGG and Caren Sue Ogg, d/b/a Tascosa Gulf Service, Defendant.

Bankruptcy No. 283-00071.
Adv. No. 283-0093.

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

April 3, 1984.

Patrick A. Pirtle, Amarillo, Tex., for plaintiff.

Qlo Crum, Thomas A. Bunkley, Jr., trustee, Amarillo, Tex., for defendant.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Pride Fuels, Inc. filed complaint under §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(4), seeking to except at least a portion of its debt from debtors' discharge. The following summary constitutes findings of fact and conclusions of law after nonjury trial.

Jimmy Wayne Ogg, during all periods of time relevant to this memorandum, was a dealer and service station operator for Pride Fuels, Inc. Pride sold gasoline products to Ogg on a consignment basis whereby Pride would be paid by Ogg as the product was sold. Their method of operation contemplated that Ogg, on a predetermined basis of two or three times a week, would take to the Pride offices a report of his sales since the last reporting period and would immediately pay to Pride the amount of money which represented the sales price from Pride to Ogg of the products so sold during that period. Thus, with a reporting period of that frequency it was not likely that Ogg would ever get very far in debt to Pride because total sales at Ogg's station averaged only $300.00 to $400.00 per day.

On February 1, 1982, Ogg made his scheduled report to Pride. On that occasion the Pride officials advised Ogg that he had missed the last reporting period and that their audit of his pumps reflected that he owed $1,469.44 for purchases and $24.62 rent. Ogg testified at the trial that he argued with those officials and told them that it was impossible for him to owe that much money because his daily gross did not exceed $400.00. Further he thought there might be a leak from his pumps. However he gave to Pride on that occasion $70.00 in cash and executed a check on the "Tascosa Gulf" account to Pride in the sum of $1,424.06. He claims that the Pride authorities told him that they wanted to hold the check as earnest money until they could check out the discrepancy. However it is clear that the check was deposited by Pride on February 2, 1982, but it was never paid by the bank because the debtors' funds were insufficient to cover it.

More than one year later on February 21, 1983, a second check, this time on the personal account of Jimmy W. or Caren S. Ogg, was made payable to Pride Fuels, Inc. in the sum of $385.12. That check was not signed by either debtor, but was deposited by Pride Fuels, Inc. in its account at Amarillo National Bank. It was not paid because of insufficient funds. Thereafter three additional checks were executed on the personal account of Jimmy W. or Caren S. Ogg to the order of Pride Fuels, Inc.,

and signed by Caren S. Ogg, being a check in the sum of $92.40 on February 23, 1983, a check in the sum of $422.40 on March 7, 1983, and a check in the sum of $189.70 on March 14, 1983. None of those checks were paid by debtors' bank because of insufficient funds.

Debtors filed petition for order for relief under Chapter 7 of Title 11, United States Code on April 19, 1983. The total debt owed by debtors to Pride Fuels, Inc. on date of bankruptcy was $13,114.14. Pride contends that at least $2,513.68 of that total debt should be excepted from debtors' discharge. It contends that at least to that extent the debtors had obtained property from Pride by false pretenses or false representations, that the execution and delivery of each of the checks constitutes a statement in writing respecting the debtors' financial condition which was materially false and which was reasonably relied upon by Pride, or that the debtors had committed fraud or defalcation while acting in a fiduciary capacity. Each of those challenges is rejected.

The thrust of the argument by Pride is that it relied upon debtors to furnish it with payments which would be honored by debtors' bank and based upon that reliance it furnished gasoline and products to the service station for sale. However, its argument that there was detrimental reliance on its part is belied by the fact that the first insufficient funds check in the sum of $1,424.06 was executed on February 1, 1982, more than one year before the four subsequent checks were executed and delivered. That $1,424.06 check was never paid by debtors' bank and Pride knew and had reason to know that at least on that occasion debtors had not paid for the products. The next insufficient funds check, executed and delivered by Caren S. Ogg the fact that both the unsigned check dated February 21, 1983 and the check dated February 23, 1983, had not cleared the bank account was known to Pride. Notwithstanding that knowledge Pride continued to do business with Ogg.

■ "Fraud" included in § 523(a)(2)(A) is that which involves moral turpitude or intentional wrongdoing. *In re Patch*, 22 B.R. 970 (Bkrtcy.M.D.1982); *In re Montbleau*, 13 B.R. 47 (Bkrtcy.D.Mass.1981); *In re Byrd*, 9 B.R. 357 (Bkrtcy.D.C.1981); *In re Green*, 5 B.R. 247 (Bkrtcy.N.D.Ga.1980). Fraud implied in law, which may exist without imputation of bad faith or immorality, is insufficient. *Green*, supra; *Byrd*, supra; 3 Collier on Bankruptcy, § 523.08 (pp. 523–40) (15th ed.). The words "or actual fraud" were added to § 523(a)(2) but had not been included in § 17a(2) of the Act. The addition of those words made no change in the law as it existed prior to enactment of the Code since false pretenses and representations were construed to mean acts involving moral turpitude or intentional wrong. Section 523(a)(2)(A) was intended to codify case law as expressed in *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1887) which interpreted fraud to mean actual or positive fraud rather than fraud implied in law.

■ Actual fraud has been construed in Texas as contemplating that the party charged therewith was inspired by a deliberate, fraudulent purpose to injure and deceive the party complaining. *Land v. Marshall*, 426 S.W.2d 841, 846 (Tex.1968); *Archer v. Griffith*, 390 S.W.2d 735 (Tex. 1964); *Universal Life and Accident Insurance Co. v. Burden*, 294 S.W.2d 855 (Tex. Civ.App.—Fort Worth 1956, no writ). In Texas a cause of action for fraud based upon false representations requires the plaintiff to show that (1) defendant made a false representation of a material fact, (2) plaintiff was entitled to rely thereon and, in fact, relied thereon (3) with resulting injury to the plaintiff. *Candela v. Steidle*, 457 S.W.2d 461 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.); *First State Bank of Corpus Christi v. Von Boeckmann-Jones Co.*, 359 S.W.2d 171 (Tex.Civ.App.—Austin 1962, no writ). For a fraudulent representation to be actionable it must be one of either a past or present material fact made with scienter on which the defrauded party relied to his detriment. *Rumfield v. Rumfield*, 324 S.W.2d 304, 306 (Tex.Civ.App.— Amarillo 1959, writ ref'd n.r.e.).

■■ In this case the debtor, Jimmy W. Ogg, acknowledges that he knew that there was not sufficient funds in the account on each occasion when he gave the checks. It is not necessary to resolve the issue on his contention that on each of those occasions he told the official at Pride to whom the check was given that he should "hold" the check for a few days before presenting it for payment, because Pride has failed to meet its burden to show by clear and convincing evidence that it relied to its detriment. Further, Pride's reliance on §523(a)(4) is misplaced. The exception to discharge created by fraud, embezzlement, misappropriation or defalcation while acting in any fiduciary capacity does not apply to fiduciary relationships arising out equitable or implied trusts but only to true trusts. *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980).

It is, therefore, ORDERED by the Court that the complaint filed by Pride Fuels, Inc. against Jimmy Wayne Ogg and Caren Sue Ogg, seeking exception of debt from discharge, be, and it is hereby, denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.